[Civ. No. 54193. Second Dist., Div. One. May 17, 1979.]

AUDREY GLUCK, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al.,
Defendants and Appellants.

## COUNSEL

John H. Larson, County Counsel, and Eric R. Young, Deputy County Counsel, for Defendants and Appellants.

Robin Meadow and Fred Okrand for Plaintiff and Respondent.

## OPINION

THOMPSON, J.—In *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265 [132 Cal.Rptr. 365] the Court of Appeal held a Los Angeles City "news rack" ordinance invalid because its broad provisions violated First Amendment guarantees and intruded upon a state-preempted area of regulation of the distribution of "harmful matter" to minors. The *Carl* court left open the possibility that a more narrowly drawn ordinance might be valid. (61 Cal.App.3d at pp. 275-276 and fn. 10.) The appeal at bar tests the validity of a Los Angeles County news rack ordinance narrowly drawn.

We conclude that the county ordinance represents time, place and manner regulation of protected speech and press which satisfies constitutional standards because it is specifically drafted to prevent only obstruction of travel, to avoid danger from defective racks, and to protect persons from unwilling exposure to explicit sexual material which is likely to be offensive to the unwilling viewer.

We conclude also that viewed as time, place and manner regulation the ordinance does not intrude upon a state-preempted area. Finally, we note that some of the enforcement provisions of the ordinance violate First Amendment and due process protection. Accordingly, we reverse an order of the trial court enjoining application of the portions of the ordinance dealing with sexually explicit material with directions that the trial court enjoin only application of the offending enforcement provisions.

*Substantive Provisions of Ordinance No. 11516*

Los Angeles County adopted its Ordinance No. 11516 to control the "placement and maintenance of news racks on the public right-of-way and the proliferation of such devices to display words and pictorial material describing and depicting explicit sexual conduct and nudity, which is thrust indiscriminately on children and unwilling adults [and] unreasonably interferes with and obstructs the public's use of such rights-of-way . . . ."

The ordinance requires that operators of news racks obtain a permit which issues without a fee and automatically upon application. It requires annual renewal of permits. Two types of restrictions are placed upon the operation of the newspaper racks. Location is limited to places other than those which obstruct the use of roads and sidewalks in fashions specifically defined in sections 1206 and 1207 of the ordinance. The display or exhibition of words or graphics of specific parts of the human anatomy or of explicit sexual conduct which exposes the display to public view from the highway is prohibited by section 1208. "Explicit sexual acts" are defined in the greatest of detail in section 1209. The depictions by word or graphic whether anatomical in nature or of "explicit sexual acts" is proscribed only when the depictions "have as their purpose or effect sexual arousal, gratification, or affront."

Other provisions of the ordinance discussed in a later segment of this opinion permit impounding of news racks operated in violation of the ordinance. The ordinance contains a "severance clause" to provide for the contingency that some portions of the ordinance may be held invalid.

*Proceedings in Trial Court*

Contending that the ordinance violates the constitutional guarantees of freedom of speech and press and invades an area preempted by state law, plaintiff sued to enjoin enforcement of the news rack law. The trial court determined that the portion of the ordinance dealing with obstruction of sidewalks and highways was valid but that portions of the ordinance allowing impounding for violation were invalid. It determined that the segments of the ordinance dealing with display invaded an area preempted by the state. Accordingly, the trial court issued a preliminary injunction restraining enforcement of sections 1208 and 1209 of the ordinance (the display restrictions) and of portions allowing impounding.

*First Amendment*

■ The constitutional guarantees of freedom of speech and press preclude state regulation of the content of nonobscene material distributed by news rack. (*Carl* v. *City of Los Angeles, supra,* 61 Cal.App.3d 265, 273-274, and cases there collected.) The constitutional protection extends to depictions and descriptions of nudity, however crude, so long as the depiction or description does not meet the legal definition of obscenity. (*Id.*) The constitutional protection is not absolute, however. "Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment." (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 63, fn. 18 [49 L.Ed.2d 310, 322, 96 S.Ct. 2440].)

Because the parties agree that the ordinance does not deal with obscenity,[1] the enactment at bar must thus be tested against the delineation of permissible time, place and manner regulation. We draw the delineation from an analysis of what seem to us to be the two controlling decisions of the United States Supreme Court in *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268] and *Young* v. *American Mini Theatres, supra,* 427 U.S. 50.

In *Erznoznik,* the high court invalidated a city ordinance which declared to be a public nuisance the exhibition of a motion picture, slide, or other depiction of bare buttocks and other forms of nudity "if such motion picture, slide, or other exhibit is visible from any public street or public place." (422 U.S. at p. 207 [45 L.Ed.2d at p. 129].)

The city sought to apply its ordinance to a drive-in theatre. Noting that the ordinance deterred drive-in theatres "from showing movies containing any nudity, however innocent or even educational" (422 U.S. at p. 211, fn. omitted [45 L.Ed.2d at p. 132]) and was not directed at "sexually explicit nudity" (422 U.S. at p. 213 [45 L.Ed.2d at p. 133]), the court held that "the limited privacy interest of persons on the public streets cannot justify this censorship of otherwise protected speech on the basis of its content." (422 U.S. at p. 212, fn. omitted [45 L.Ed.2d at p. 132].) Nor, said the high court, could the broad restriction "be justified by any other governmental interest pertaining to minors." (422 U.S. at p. 213 [45 L.Ed.2d at p. 133].)

---

[1]The county concedes that if the purpose of the ordinance were to preclude distribution of obscenity the ordinance would invade an area preempted by state law.

In *Young*, the United States Supreme Court considered the validity of "[z]oning ordinances adopted by the city of Detroit [which differentiated] between motion picture theatres which exhibit sexually explicit 'adult' movies and those which do not." (427 U.S. at p. 52 [49 L.Ed.2d at p. 315].) Although the Detroit ordinance required dispersal of "adult" theatres in a fashion not required of others, the high court held that the ordinance satisfied constitutional standards.

The precise scope of the *Young* rule is not expressed directly in the opinion; it must be divined from the separate opinions of the court.

Speaking through Mr. Justice Stevens, four justices find that the Detroit ordinance satisfies the First Amendment both because it is an exercise of a traditional power over zoning vested in municipal government (427 U.S. at pp. 62-63 [49 L.Ed.2d at p. 321]) and because "[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate that inspired Voltaire's immortal comment.[2] . . . Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures." (427 U.S. at pp. 70-71 [49 L.Ed.2d at p. 326].) Four justices of the high court speaking through dissenting opinions of Justices Stewart and Blackmun find that the Detroit ordinance violates the First Amendment because although the zoning is time, place and manner oriented it is not "content neutral." (427 U.S. at pp. 86-87 [49 L.Ed.2d at pp. 335-336].)

The majority in *Young* is created by a separate concurring opinion of Mr. Justice Powell. While holding that in general content-related regulation of speech and press violates First Amendment guarantees, the concurring opinion distinguishes *Erznoznik* because of the failure of the Jacksonville ordinance there involved to achieve within constitutional bounds its objectives of protecting "citizens from unwilling exposure to possibly offensive materials," protecting "children from such materials," and prevention of "the slowing of passing traffic and the likelihood of resulting accidents." (427 U.S. at p. 83 [49 L.Ed.2d at p. 333].) The concurring opinion continues: "As to the first purpose, the [*Erznoznik*]

---

2 " 'I disapprove of what you say, but I will defend to the death your right to say it.' " (427 U.S. at p. 63, fn. omitted [49 L.Ed.2d at p. 322].)

ordinance was overbroad because it proscribed the showing of any nudity, however innocent or educational. Moreover, potential viewers who deemed particular nudity to be offensive were not captives; they had only to look elsewhere. [Citations.] As to minors the Jacksonville ordinance was overbroad because it 'might prohibit newsreel scenes of the opening of an art exhibit as well as shots of bathers on a beach.' [Citation.] Finally, the ordinance was not rationally tailored to support its asserted purpose as a traffic regulation." (427 U.S. at p. 83 [49 L.Ed.2d at p. 334].)

As we construe the concurring opinion in *Young,* speech which exploits sexually explicit content is subject to some regulation although the speech stops short of obscenity. Included within the scope of permissible regulation are narrowly and specifically drawn restrictions upon the time, place and manner of distribution designed to avoid display to a public which is not free to look elsewhere. The specificity of the restriction must prevent its being applied to depictions of nudity and the like which are "innocent or educational."

The portions of the Los Angeles County ordinance restricting the display of sexually explicit materials in news racks meets that test. The news racks displaying the sexually oriented material do not exist in isolation. They are commonly placed in public locations adjoining news racks from which other forms of periodicals are displayed and sold. Conceivably, a member of the public might, while passing, avert his gaze from the sexually explicit display if he believes it offensive to him, but he cannot do so if he wishes to purchase a copy of the Wall Street Journal, Los Angeles Times, Tidings, or Christian Science Monitor from a rack. Finding the appropriate rack from which the member of the public is to exercise his First Amendment right to be informed makes him a captive exposed to the display of the explicit sexual graphics of the other news racks with which the rack he seeks is intermingled. The Los Angeles County ordinance defines "sexually explicit material" in exquisite detail and in a form that prevents application of the restriction to educational or "innocent" matter. The ordinance definition of proscribed anatomical display must also be read in context to refer only to that which is designed to exploit the sexually explicit. The ordinance does not prohibit dissemination of the sexually explicit material; it merely precludes display of the material in news racks in a form which exploits its content. The material may be sold through news racks on public streets and sidewalks so long as the display does not exploit the explicit sexual material itself. The material can be sold with exploitation by graphic display from places other than the streets and sidewalks.

■ We note at this juncture that plaintiff mounts two attacks upon the ordinance more narrow in scope than a general assertion that it invades an area protected by the First Amendment. Plaintiff claims: (1) the ordinance is overly broad; and (2) is fatally deficient for lack of a requirement of intentional violation of the display restriction. The first argument focuses on ordinance language which, after specifically describing the anatomical depiction of the proscribed display, limits the restriction by the requirement that to violate the ordinance the display must be with the "purpose or effect [of] sexual arousal, gratification, or affront." From that language, plaintiff argues that the possibility of "affront" is so uncertain in light of the spectrum of human sensibilities that persons desiring to exercise First Amendment rights will be deterred by an inability to predict what will "affront" the viewer. The second argument is related. It contends that, because of the language of the ordinance, a news rack operator could be in violation if he accidentally caused "sexual arousal, gratification or affront."

Plaintiff's arguments misconstrue the ordinance. Rather than being indefinite, the enactment is extremely specific. Read in context, the phrase which modifies the very detailed description of the human anatomy must be construed as requiring that the display exploit explicit sexual material. Nor can the language to which plaintiff refers be reasonably construed as proscribing accidental incursions into what the overly sensitive might find either abnormally arousing or distasteful. Read in its entirety, the display sections of the ordinance go only to material that is used intentionally to exploit the sexually explicit to a captive public.

While attacking the enforcement provisions of the ordinance related to impounding of news racks which are placed so as to obstruct access or passage, plaintiff does not assert that the substantive portion of the ordinance related to those items is invalid.

We hence conclude that as construed in this opinion the ordinance at bar does not offend the First Amendment.

*State Preemption*

■ Plaintiff argues that if the Los Angeles County ordinance is construed to avoid the impact of the First Amendment it then runs afoul of California's statewide comprehensive regulation of obscenity and proscribed sexual behavior.

■ "[A] local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. [Citations.] Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' [Citations.]" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

In *Carl* v. *City of Los Angeles, supra,* 61 Cal.App.3d 265, a portion of a news rack ordinance dealing with display of "harmful matter" to minors was held preempted by a statewide legislative scheme covering exactly the same area. (61 Cal.App.3d at pp. 269-270.) Here, however, we deal with an ordinance which, while related to state law dealing with obscenity and proscribing some forms of sexual activity, does not cover the same ground as the statewide legislation. ■ The question then is whether the field has been so occupied by the state law that time, place and manner regulation of nonobscene matter of a sexually explicit nature is prohibited to local government.

Decisional law furnishes no precise test of implicit state preemption of a legislative field by the enactment of a comprehensive statutory scheme. Our Supreme Court has stated: "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme' and are not required to find such an intent solely in the language used in the statute." (*In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].) The Court of Appeal has applied broader language borrowed from a Supreme Court concurring opinion: " 'Whether a particular statute or group of statutes is sufficiently comprehensive to show an intent to occupy the entire field is a matter which cannot properly be decided upon the basis of any single, precise test. Rather, the courts must rely upon broad general principles which are flexible enough to embrace our varied and rapidly expanding body of legislation. Determination of the question depends primarily upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate, and the intent of the Legislature is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. . . . [W]hether the state has fully occupied the field with respect to any given subject depends upon

considerations which will necessarily vary and must therefore be determined in every case without prejudging the result as to subjects not before the court.' " (*Eckl* v. *Davis* (1975) 51 Cal.App.3d 831, 836-837 [124 Cal.Rptr. 685].)

The decisional language is not so much a standard of decision to determine the presence or absence of state preemption as a means of rationalization. The methodology results in conclusions that a local ordinance dealing with "resorting" invades a statewide scheme regulating illicit sexual activity (*In re Lane, supra,* 58 Cal.2d 99), but that an ordinance which prohibits nudity in public parks and beaches does not. (*Eckl* v. *Davis, supra,* 51 Cal.App.3d 831.) A local ordinance requiring registration of convicted felons is held preempted by a state requirement that convicted sex offenders register (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974]), but a local ordinance which requires registration of firearms is not despite a much more comprehensive scheme of statewide legislation. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930].) Neither does state legislation prohibiting a large number of described games of chance preempt the field to the exclusion of local ordinances prohibiting gambling. (*In re Hubbard* (1964) 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809], disapproved on another point in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137].)

Absent a standard of decision, we must in effect forecast the trend of California Supreme Court decisions while accepting the uncertainty inherent in that process. We construe the trend as pointing to the conclusion that the ordinance at bar is not preempted.

In 1960, our Supreme Court declared, in *Abbott* v. *City of Los Angeles, supra,* that: "When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state." (53 Cal.2d at p. 681.) Decisions after *Abbott* belie that statement, however. Since *Abbott,* attacks asserting state preemption have failed as to local ordinances proscribing loitering despite the then broad sweep of Penal Code section 647 (*Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584 [38 Cal.Rptr. 226]), prohibiting consumption of alcoholic beverages on public streets despite a comprehensive statewide scheme relating to alcohol (*People* v. *Butler* (1967) 252 Cal.App.2d Supp. 1053 [59 Cal.Rptr. 924]), requiring firearms registration (*Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, in which the Supreme Court cites with approval *Gleason* and *Butler*), prohibiting described gambling games (*In re*

*Hubbard, supra,* 62 Cal.2d 119), and prohibiting nudity in described public places (*Eckl* v. *Davis, supra,* 51 Cal.App.3d 831).

The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption. (See e.g., *Galvan* v. *Superior Court, supra,* 70 Cal.2d at pp. 862-864.) Here we deal with an ordinance regulating the use of streets and sidewalks, one both particularly within the realm of local government and one where conditions peculiar to the locality may differ from place to place. The problem of the "captive" viewer may be quite different in Los Angeles County than it is in Mono or in San Francisco.

We hence conclude that the state has not so preempted the area of legislation as to invalidate the ordinance here involved.

### Enforcement Procedures

The ordinance contains detailed enforcement procedures. It provides that violations are misdemeanors. In addition, seizure and impounding of offending news racks is permitted. Two separate procedures are specified.

If the news rack obstructs vehicular or pedestrian traffic, designated personnel may "tag" the rack with a notice of the violation and may correct the violation on the spot. If the obstruction violation is not corrected within seven days from notice of the violation which must be sent within two working days of the date the rack is tagged, the rack may be impounded. The rack may be impounded without the preamble of tagging and notice if it is "creating a dangerous or hazardous condition."

If designated enforcement personnel determine that a news rack violates the display restrictions of the ordinance, the tagging procedure does not apply. Then the enforcement officers are required to "present to any magistrate affidavits or other evidence sufficient to show a prima facie violation . . . and obtain a written order directing the impounding of news racks containing the particular material found to be in violation . . . by the magistrate." Written notice of the impounding must be sent to the licensee within two working days. The ordinance requires further that if a news rack is impounded for violation of the display restrictions, a complaint for violation of the ordinance must be filed within 14 days. If the complaint is not filed within that time, the rack must be returned.

A licensee whose news rack has been impounded is entitled to its return within 30 days upon payment of $25 plus reasonable costs of impounding and storing the rack in excess of that amount unless the rack is being "held as evidence in a criminal prosecution." A magistrate may order the return of the rack without payment of the fee upon a showing of good cause as may a judge upon dismissal or acquittal of a criminal charge of a violation of the ordinance. In that event, the judge may also order the return of any impound fees previously paid. If there is no criminal proceeding pending in which the rack is being held as evidence, and if neither the fee has been paid nor a hearing requested within the specified period, the rack may be sold or otherwise disposed of and its contents, including cash, retained by the county.

The ordinance contains provisions for hearing before the road commissioner or his delegate with an appeal to the board of supervisors. The purpose of the hearing is to determine "whether the news rack was rightfully impounded and whether it should be returned to the permittee . . . without payment of impound fees and costs . . . ."

■ Except for the declaration that violation of the news rack ordinance is a misdemeanor, the enactment's enforcement mechanisms are fatally defective.

The requirements of valid enforcement provisions for restrictions upon news racks are spelled out in *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294 [138 Cal.Rptr. 53, 562 P.2d 1302]. ■ Quoting from *Carroll* v. *Princess Anne* (1968) 393 U.S. 175, 180 [21 L.Ed.2d 325, 330-331, 89 S.Ct. 347], our Supreme Court said: " 'There is a place in our jurisprudence for *ex parte* issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.' " (19 Cal.3d at p. 311.) Because of its recognition of the specially protected nature of property utilized in communication (19 Cal.3d at p. 309), the *Kash* court held invalid provisions of the City of Los Angeles news rack ordinance which permitted summary seizure of offending racks. (19 Cal.3d at pp. 312-313.) The court recognized, however, that an ordinance narrowly drawn to permit immediate seizure where the rack presents a danger to pedestrians is permissible as is an ordinance provision which notifies of the imminent seizure of nondangerous racks with opportunity either to cure the violation or to contest the seizure in an informal administrative forum. (19 Cal.3d at p. 313.)

■ Here the seizure provisions related to violations of the display restrictions of the ordinance violate the *Kash* proscription upon ex parte orders enjoining the exercise of protected speech. The county concedes that the display restrictions apply equally to protected speech and to obscenity. The ordinance permits the seizure upon an ex parte finding by a magistrate that there is a "prima facie" violation of the display restriction. The news rack operator is not entitled to be heard or to present evidence to the magistrate.

Here the seizure provisions related to the obstruction prohibitions of the ordinance suffer from a different but no less intrusive vice. While the ordinance provides on its face for a hearing to test the validity of a seizure, the provision for hearing is farcical.

The licensee whose news rack is seized has a choice; he may secure return of the rack within 30 days by paying the impound fee or he may request a hearing to be held during an open-end period of time where, if he is successful, he will avoid paying the fee but still be forced to wait up to an additional 30 days for the return of the rack. If the news rack is "tagged" in error, the licensee has no option except to correct the nonexistent violation, an option which will also be nonexistent if the error is egregious, or to suffer a seizure with all that follows.

In sum, the enforcement provision of the ordinance dealing with obstruction violations: (1) permits seizure without an opportunity of the licensee to be heard on the issue of the validity of the claimed violation for which the rack is "tagged"; (2) permits a hearing solely for the purpose of avoiding the payment of an impound fee of about $25; and (3) permits the county to hold racks for up to 30 days at whim. There is thus no proceeding for a practical hearing at all. The scheme is a transparent one to force payment of impound fees irrespective of the propriety of the seizure. The licensee who demands a hearing rather than paying the impound fee may be required to wait until the county determines, in its unlimited discretion, when it should hold the hearing. Even if the fee is paid or if the rack is seized in error, the rack need not be returned for 30 days.

We thus conclude that the impound procedures provided in the ordinance are constitutionally defective. Despite that defect, the county retains its inherent power to remove a dangerous rack from the streets if the danger cannot be otherwise corrected and provided it affords a quick and reasonable opportunity to the licensee or owner to obtain the rack's

return. The county, of course, retains its remedies and methods of enforcement provided by law other than the ordinance. It retains the right to prosecute as misdemeanors ordinance violations.

*Disposition*

The order of the superior court is reversed. The court is directed to enter a new order denying plaintiff's motion for preliminary injunction except to the extent that the motion seeks to enjoin application of section 1210, 1211, 1212, and 1213 of Los Angeles County Ordinance No. 11516. The court is further directed to issue its preliminary injunction restraining enforcement of those sections of the ordinance. Each party is to bear its own costs on appeal.

Lillie, Acting P. J., concurred.

**HANSON, J.,** Concurring and Dissenting.—*I CONCUR* in that portion of the majority opinion which concludes that the provisions of Los Angeles County Ordinance No. 11516 pertaining to the "time, place and manner" of locating news racks on public ways and prohibiting "sexually explicit display(s)" in news racks do not offend the First Amendment; that the latter provisions have not been preempted by the state; and that there is no infirmity in that portion of the enforcement provisions which renders violation of the ordinance a crime, to wit, a misdemeanor.

*I DISAGREE,* however, with that portion of the majority opinion which concludes that the impound procedures of the enforcement provisions provided in the ordinance are constitutionally defective. I would hold that the entire ordinance is valid, reverse the order of the superior court and direct that court to enter a new order denying plaintiff's motion for a preliminary injunction.

THE HISTORY of the efforts of the *City* of Los Angeles to control the problems caused by the proliferation of news racks on its public sidewalks is informative and instructive for comparison purposes with the Los Angeles *County* ordinance which is the subject of the case at bench.

In 1972 the City of Los Angeles enacted Municipal Code section 42.00 (hereinafter section 42.00)[1] regulating the size, weight, appearance and

___
[1]Los Angeles Municipal Code section 42.00, subdivision (f), provided as follows:
"(1) No person shall install, use or maintain any news rack which projects onto, into or over any part of the roadway of any public street, or which rests, wholly or in part, upon,

placement of news racks installed and maintained on the city's sidewalks. In 1974 the city council added two additional provisions in an effort to regulate the dissemination of pornographic materials through publicly located news racks.

along or over any portion of a roadway.

"(2) No person shall install, use or maintain any news rack which in whole or in part rests upon in or over any sidewalk or parkway, when such installation, use of [sic] maintenance endangers the safety of persons or property, or when such site or location is used for public utility purposes, public transportation purposes or other government use, or when such news rack unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic, the ingress into or egress from any residence, place of business, or any legally parked or stopped vehicle, or the use of poles, posts, traffic signs or signals, hydrants, mailboxes, or other objects permitted at or near said location, or when such news rack interferes with the cleaning of any sidewalk by the use of mechanical sidewalk cleaning machinery.

"(3) Any news rack which in whole or in part rests upon, in or over any sidewalk or parkway, shall comply with the following standards:

"(A) No news rack shall exceed five feet in height, thirty inches in width, or two feet in depth.

"(B) News racks shall only be placed near a curb or adjacent to the wall of a building. News racks placed near the curb shall be placed no less than eighteen inches nor more than twenty-four inches from the edge of the curb. News racks placed adjacent to the wall of a building shall be placed parallel to such wall and not more than six inches from the wall. No news rack shall be placed or maintained on a sidewalk or parkway opposite a news stand or another news rack.

"(C) No news rack shall be chained, bolted or otherwise attached to any property not owned by the owner of the news rack or to any permanently fixed object.

"(D) News racks may be chained or otherwise attached to one another; however, no more than three news racks may be joined together in this manner, and a space of no less than eighteen inches shall separate each group of three news racks so attached.

"(E) No news rack, or group of attached news racks allowed under paragraph (D) hereof, shall weigh, in the aggregate, in excess of 125 pounds when empty.

"(F) No news rack shall be placed, installed, used or maintained:

"1) Within three feet of any marked crosswalk.

"2) Within fifteen feet of the curb return of any unmarked crosswalk.

"3) Within three feet of any fire hydrant, fire call box, police call box or other emergency facility.

"4) Within three feet of any driveway.

"5) Within three feet ahead of, and fifteen feet to the rear of any sign marking a designated bus stop.

"6) Within three feet of any bus bench.

"7) At any location whereby the clear space for the passageway of pedestrians is reduced to less than six feet.

"8) Within three feet of any area improved with lawn, flowers, shrubs or trees or within three feet of any display window of any building abutting the sidewalk or parkway or in such manner as to impede or interfere with the reasonable use of such window for display purposes.

"(G) No news rack shall be used for advertising signs or publicity purposes other than that dealing with the display, sale or purchase of the newspaper or news periodical sold therein.

"(H) Each news rack shall be maintained in a clean, neat and attractive condition and in good repair at all times.

"(4) Every person who places or maintains a news rack on the streets of the City of Los Angeles shall have his name, address, telephone number affixed thereto in a place where

In 1976 the Court of Appeal in *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265, [132 Cal.Rptr. 365], invalidated subsections(f)(7) and (8) of section 42.00 of the city ordinance (see fn. 1, *ante*) pertaining to the dissemination of pornographic materials. The court concluded that the contents of subsection (7) had been preempted by the state since it "impose[d] additional requirements on distributors of harmful matter not found in [Penal Code] section 313.1," (*Carl* v. *City of Los Angeles, supra,* 61 Cal.App.3d 265, 271) this latter section having preempted the field of offering and selling harmful matter to minors. The court said at page 272

such information may be easily seen.

"(5) Any news rack, as said term is defined herein, installed, used or maintained in violation of any of the provisions of this subsection (f) of Section 42.00, except subparagraphs (7) and (8), may be summarily removed by any public officer of this City and stored in any convenient place. The public officer making such removal and storage shall thereupon give notice of such fact to the Board of Public Works Commissioners, and immediately surrender possession of the news rack to the representative designated by the Board of Public Works Commissioners. Immediately upon the receipt of such representative of any news rack so removed, the news rack shall be placed in storage in a place designated by order of said Board and the Board shall thereupon take reasonable steps to notify the owner of the news rack of the fact of its removal, the place of its storage, and of the fact that unless the rack is claimed within 45 days, and the cost of the pickup as fixed by the Board paid, that the rack will be deemed abandoned and will be destroyed. Upon failure of the owner to claim such news rack and pay such costs as fixed by the Board within 45 days after such notice has been sent to the owner, such news rack shall be deemed to have been abandoned by the owner, and to be abandoned property, and the news rack and its contents, except money, shall be destroyed by representatives of the Board of Public Works Commissioners pursuant to the provisions of this subparagraph. Any money contained in any news rack so destroyed shall be held in the official custody of the Board of Public Works Commissioners for a period of three (3) years and handled pursuant to Article 3, Chapter 1, Part 1, Division 1 of Title 3 of the Government Code of California. The provisions of this subsection shall govern the removal, storage, abandonment and disposition of news racks maintained on public sidewalks in violation of this subsection, and their contents, the provisions of Section 52.55 of this Code notwithstanding.

"(6) In the case of violations of this subsection relative to restrictions upon attachments of news racks to property other than that owned by the owner of the news rack, to fixed objects or each other, and upon location of news racks, any public body or officer may, as an alternative to removal under Subdivision (5) hereof, remove such attachment and/or move such rack or racks in order to restore them to a legal condition.

"(7) No person shall sell, offer for sale, or keep or maintain for sale any Harmful Matter, as such term is defined in Section 313, Chapter 7.6 Title 9 Part 1 of the Penal Code of California, in any news rack on any public sidewalk unless such sale is made, or offer of sale is maintained, in the presence of an adult person authorized to prevent the purchase of such matter by a minor.

"(8) No person shall sell, offer for sale, or keep or maintain any newspaper or news periodical in any news rack on any sidewalk in such manner as to expose to the public view any photograph, cartoon or drawing, contained within such publication, displaying any of the following:

"1. The genitals, pubic hair, buttocks, natal cleft, perineum, anal region or pubic hair region of any person other than a child under the age of puberty;

"2. Any portion of the breast, at or below the areola thereof, of any female person, other than a child under the age of puberty."

that it is obvious "subsection (7) is not a regulation of news rack sales as such, but an attempt to regulate such sales based on content. Entirely different issues would be presented if subsection (7) were a 'time, place, and manner' ordinance governing all news rack sales regardless of content."

The *Carl* court addressed subsection (f)(8) of the city ordinance as a First Amendment problem and concluded it was "indistinguishable from the ordinance held unconstitutional by the United States Supreme Court in *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [. . .]," (*Carl* v. *City of Los Angeles, supra,* 61 Cal.App.3d at p. 273) but stated at page 276: "The question before us might be entirely different if subsection (8) dealt only with photographs of genitals, rather than with any form of reproduction of any part of the adult body usually covered in public. Whether such a narrowly drawn ordinance would pass muster we need not say. . . ." The court in footnote 10 at this point (p. 276) stated: "The City may find encouragement in *Young* v. *American Mini Theatres, Inc., supra,* 427 U.S. 50 [. . .]. There, the Supreme Court upheld a Detroit zoning ordinance which differentiated between 'motion picture theatres which exhibit sexually explicit "adult" movies and those which do not.' (427 U.S. at p. 52) [. . .].) The ordinance defined the restricted establishments based on uses 'characterized by an *emphasis* on matter . . . relating to "Specified Sexual Activities" or "Specified Anatomical Areas," . . .' (Italics added.) Concededly the ordinance applied to constitutionally protected material. [¶] The court distinguished *Erznoznik* by pointing out that the ordinance there involved 'broadly prohibited scenes which could not be deemed inappropriate even for juveniles.' (427 U.S. at p. 71, fn. 35 [. . .].) Such a broad prohibition is, of course, the major problem of subsection (8). [¶] We do not suggest an exact parallel between the problem with which Detroit dealt successfully in *Young*, and the situation on the sidewalks of Los Angeles which triggered subsection (8). *Young* is, however, a clear indication that the high court is not hostile to some regulation of expression which approaches the borderline of obscenity."

Following the invalidation of subsections (f)(7) and (8) of section 42.00 by the *Carl* court, another broad-based assault was made on the balance of the city ordinance culminating in the state Supreme Court case of *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294 [138 Cal.Rptr. 53, 562 P.2d 1302].

In *Kash Enterprises* it was contended, amongst other things, that a number of the provisions in the Los Angeles city ordinance (see fn. 1,

*ante*) were impermissibly vague and overbroad and the enforcement provisions authorizing summary seizure, retention and destruction of offending news racks, without according their owners any hearing as to the validity of the seizures, violated both procedural due process and First Amendment principles. The court reversed and remanded with directions. Pertinent here is the Supreme Court's holding in respect to the enforcement provisions of the ordinance to the effect that the seizure, retention and destruction of news racks without affording the owner either a pre- or posttaking hearing violated the rights of the owners to procedural due process and by authorizing summary seizures the ordinance offended the First Amendment rights of the public.

TURNING TO THE CASE AT BENCH—On May 3, 1977, the Board of Supervisors of Los Angeles County enacted ordinance No. 11516 set out *in haec verba* in footnote 2 below.[2]

---

[2]Los Angeles County Ordinance No. 11516 provided as follows:

"An ordinance amending Chapter XII (beginning with Section 1201) and sections contained therein, of Ordinance No. 3597, the Highway Permit Ordinance, relating to news racks.

"The Board of Supervisors of the County of Los Angeles do ordain as follows:

"Section 1. PURPOSE AND INTENT

"The Board of Supervisors of the County of Los Angeles finds and declares that the uncontrolled placement and maintenance of news racks on the public right-of-way and the proliferation of such devices to display words and pictorial material describing and depicting explicit sexual conduct and nudity, which is thrust indiscriminately on children and unwilling adults, unreasonably interferes with and obstructs the public's use of such rights-of-way, constitutes unwarranted invasions of individual privacy, is injurious to health, is indecent and offensive to the senses, and such an obstruction of the free use of property so as to interfere with the comfortable enjoyment of life and property by the entire community. The Board of Supervisors of the County of Los Angeles also finds, however, that the use of such rights-of-way is so historically associated with the sale and distribution of newspapers and publications that access to these areas for such purposes should not be absolutely denied. The Board further finds that these strong and competing interests require a reasonable accommodation which can only be satisfactorily achieved through the means of this Ordinance designed to accommodate such interests by regulating the time, place and manner of using such news racks.

"Section 2. Chapter XII (beginning with Section 1201) of said Ordinance, and the sections therein, are amended to read:

"Sec. 1201. PERMIT REQUIRED. No person, whether as a principal or agent, clerk or employee, either for himself or any other person, or as an officer of any corporation, or otherwise, shall place or maintain a news rack on or projecting onto a highway unless and until a news rack permit has been obtained from the Commissioner.

"Sec. 1202. NO FEE REQUIRED. No fee shall be required for the issuance of a news rack permit.

"Sec. 1203. ISSUANCE OF PERMIT; ONLY ONE PERMIT REQUIRED. Upon proper application on forms provided by the Commissioner which may require any of the information described in Sections 201, 202, and/or 203 of this Ordinance, the Commissioner shall issue the applicant a news rack permit. Notwithstanding any other provision of this Ordinance, the Commissioner may not refuse to issue a news rack permit properly

applied for. One permit shall permit the placement and maintenance of any number of news racks on the highway in accordance with the provisions of this Chapter.

"Sec. 1204. RENEWABLE ANNUALLY. A news rack permit shall be renewable annually.

"Sec. 1205. NEWS RACK IDENTIFICATION. Every news rack permittee shall permanently affix to each news rack placed or maintained on or projecting over any portion of the highway: (1) the permittee's name, address, and phone number as required by Business and Professions Code Section 1757; and (2) the permittee's permit number.

"Sec. 1206. PROHIBITION OF NEWS RACKS WHERE VEHICLES PERMITTED. No person shall place or maintain any news racks on any portion of or projecting onto, into or over any portion of the highway on which vehicles are lawfully permitted.

"Sec. 1207. UNLAWFUL OBSTRUCTIONS. No news rack shall be placed, installed, used, or maintained in the following locations:

"(a) Within three feet of any marked crosswalk.

"(b) Within fifteen feet of the curb return of any unmarked crosswalk.

"(c) Within three feet of any fire hydrant, fire call box, police call box or other emergency facility.

"(d) Within three feet of any driveway.

"(e) Within three feet ahead of, and fifteen feet to the rear of any sign or pavement markings marking a designated bus stop measured parallel to the flow of traffic.

"(f) Within three feet of any bus bench.

"(g) At any location where the news rack causes, creates, or constitutes a traffic hazard.

"(h) At any location where the news rack unreasonably obstructs or interferes with access to, or the use and enjoyment of abutting property.

"(i) Where the news rack will endanger persons or property.

"(j) Where the news rack will unreasonably interfere with or obstruct the flow of pedestrian or vehicular traffic on the highway.

"(k) At any location whereby the clear space for the passage of pedestrians is reduced to less than three feet.

"The provisions of Section 204 of this ordinance are hereby made specifically applicable to Subsections (g) to (j), supra.

"Sec. 1208. DISPLAY OF CERTAIN MATTER PROHIBITED. Publications offered for sale from news racks placed or maintained on or projecting over the highway shall not be displayed or exhibited in a manner which exposes to public view from the highway any of the following:

"(a) Any statements or words describing explicit sexual acts, sexual organs, or excrement where such statements or words have as their purpose or effect sexual arousal, gratification, or affront.

"(b) Any picture or illustration of genitals, pubic hair, perineums, anuses, or anal regions of any person where such picture or illustration has as its purpose or effect sexual arousal, gratification, or affront.

"(c) Any picture or illustration depicting explicit sexual acts where such picture or illustration has as its purpose or effect sexual arousal, gratification, or affront.

"Sec. 1209. DEFINITION OF EXPLICIT SEXUAL ACTS. 'Explicit sexual acts,' as used in this chapter, means depictions of sexual intercourse, oral copulation, anal intercourse, oral-anal copulation, bestiality, sadism, masochism, or excretory functions in conjunction with sexual activity, masturbation, or lewd exhibition of the genitals, whether any of the above conduct is depicted or described as being performed alone or between members of the same or opposite sex or between humans and animals, or other act of sexual arousal involving any physical contact with a person's genital, pubic region, pubic hair, perineum, anus or anal region.

"Sec. 1210. IMPOUNDING OF NEWS RACKS.

"(a) A news rack may be impounded for being in violation of Sections 1201, 1205, 1206 or 1207 of this chapter under the following conditions:

"(1) The Sheriff or Commissioner or their designates must attach a tag upon the particular rack found in violation. A written notice of the violation shall be sent within two working days to the permittee, or person, if known, maintaining the news rack. The permittee or person maintaining the news rack must correct the violation within seven days from the date on the tag. The Sheriff or Commissioner or their designates may impound the news rack if the violation is not corrected within seven days from the date on the tag.

"(2) Notwithstanding the impound provisions of this section, the Sheriff or Commissioner or their designates may immediately correct any violation of Section 1207 and if such violation is creating a dangerous or hazardous condition, may immediately remove and impound any such news rack. If the news rack is impounded pursuant to this section, a written notice of such action shall be sent to the permittee, or person, if known, maintaining the news rack within two working days after the impoundment.

"(b) A news rack may be impounded for being in violation of Section 1208 of this chapter under the following conditions:

"(1) The Sheriff or his designates must first present to any magistrate affidavits or other evidence sufficient to show a prima facie violation of said section and obtain a written order directing the impounding of news racks containing the particular material found to be in violation of said section by the magistrate. A written notice of the impounding shall be sent within two working days to the permittee, or person, if known, maintaining the news rack.

"(2) Whenever a news rack is impounded for violation of Section 1208, a complaint for violation of Section 1208 of this Ordinance, for which the news rack was impounded, must be filed within fourteen days of the impound. If such action is not commenced within fourteen days, the news rack, together with its contents and all monies, if any, shall be released to the permittee, or if there is no known permittee, to the claimant if he provides sufficient proof of ownership of such news rack, without requiring the payment of any impound fees.

"Sec. 1211.   RETURN OF IMPOUNDED NEWS RACKS.

"(a) Unless the news rack and its contents are being held as evidence in a criminal prosecution, the permittee, or if there is no known permittee, a claimant who provides sufficient proof of ownership of such news rack may have such news rack, together with its contents and all monies, if any, returned within a reasonable time, not to exceed thirty days from the date of removal and impoundment, or if a hearing is timely requested pursuant to Section 1212 of this Ordinance, within thirty days from the date of the final decision resulting from such hearing, upon paying an impound fee of $25.00 plus the reasonable cost of impounding, removing, and storing the news rack, if any, in excess of $25.00.

"(b) For good cause, the magistrate ordering the impounding of a news rack pursuant to Section 1210(b)(1) of this chapter may order such news rack, together with its contents and all monies, if any, impounded returned without payment of any impound fees and costs, to the permittee, or if there is no known permittee, to a claimant who provides sufficient proof of ownership of such news rack.

"(c)   Should there be a dismissal of an action charging a violation of this Ordinance, or an acquittal of such charges, the court ordering such dismissal or entering such acquittal shall provide for the release of any news rack and its contents and all monies, if any, impounded or the return of any impound fee and costs paid for the release of a news rack impounded pursuant to such charges.

"(d) If the news rack is not being held as evidence in any criminal proceeding, and no criminal proceeding concerning the violation for which the news rack was impounded is still pending, and if no hearing pursuant to Section 1212 of this chapter has been requested, or, if requested, has resulted in a final decision that the news rack was rightfully impounded, and if the impound fees and costs specified in this section have not been paid within the time specified, the Sheriff or Commissioner or designates may sell, or otherwise dispose of the news rack and its contents, if any, and retain the proceeds

from any such sale or other disposition and any monies contained in said news rack at the time of its removal and impoundment.

"Sec. 1212. HEARINGS.

"(a) Request for hearing. Any permittee, or if there is no permittee, any claimant who provides sufficient proof of ownership of any impounded news rack, may, within thirty days of the impounding, request in writing a hearing before the Road Commissioner of the County of Los Angeles, or his designate, for the purpose of demonstrating that the news rack was not rightfully impounded and should be returned to such permittee or claimant.

"(b) Notice of hearing. Within two business days of the day the request for hearing is received, the Road Commissioner, or his designate, shall set the hearing date and shall notify the permittee or claimant by first class mail to such address as may be provided of the date, time, and place of the hearing.

"(c) Conduct of hearing. At the time set for the hearing or at the date to which the hearing may be continued, the Road Commissioner, or his designate, shall hear the permittee or claimant, who may present any facts to show that the news rack was not rightfully impounded and should be returned to such permittee or claimant, and shall hear, also, facts presented by the Sheriff, his designate, or others that the news rack was rightfully seized and should not be returned.

"(d) Decision after hearing. At the close of the hearing or at any time within thirty days thereafter, the Road Commissioner, or his designate, shall find and determine from the facts produced at the hearing, whether the news rack was rightfully impounded and whether it should be returned to the permittee or claimant without payment of impound fees and costs, and shall make his decision and order accordingly.

"(e) Notice of decision. The Road Commissioner, or his designate, shall notify the permittee or claimant by first class mail, postage prepaid, return receipt requested, of the decision and order.

"Sec. 1213. APPEAL AFTER HEARING.

"(a) Appeal. Any permittee, or claimant, may, within ten days after receipt of notice of decision, appeal such decision to the Board of Supervisors of the County of Los Angeles.

"(b) Contents of appeal. The appeal shall be in writing, shall state the legal and factual basis upon which the appeal is to be based and shall be filed with the Road Commissioner. The Road Commissioner shall forward the appeal, together with a copy of the decision and order, to the Clerk of the Board of Supervisors.

"(c) Action by Board. Upon receipt of the appeal and order and decision, the Board of Supervisors may take any one of the following actions:

"(1) Approve the decision and order.

"(2) Refer the matter back to the Road Commissioner with or without instructions.

"(3) Set the matter for public hearing before itself. Such public hearing shall be held de novo as if no hearing previously had been held.

"Sec. 1214. PENALTY.

"(a) Notwithstanding any other provision of this Ordinance, any person who violates Sections 1201, 1205, 1206 or 1207 of this chapter shall be guilty of a misdemeanor and may be punished by fine not exceeding $500.

"(b) Notwithstanding any other provision of this Ordinance, any person who violates Section 1208 of this chapter shall be guilty of a misdemeanor and may be punished by imprisonment in the County Jail not to exceed six months, or by fine not exceeding $500, or by both such fine and imprisonment.

"Sec. 1215. OTHER REMEDIES. The provisions of this chapter shall not limit any other remedies authorized by law.

"Sec. 1216. SEVERANCE CLAUSE. If any section, subsection, subpart, or provision of this chapter or the application thereof to any person or circumstances is held invalid, the remainder of the Ordinance and the application of such to other persons or circumstances shall not be affected thereby."

Plaintiff/respondent Audrey Gluck[3] brought an action in the superior court seeking to enjoin enforcement of ordinance No. 11516 contending that it violates First Amendment rights and invades an area preempted by state law. On September 16, 1977, following a hearing, the superior court made the following order: "Preliminary injunction is denied as to Sections 1201 through 1205 inclusive; granted as to Sections 1208 and 1209; denied as to Section 1210(a)(1); granted as to Section 1210(a)(2) commencing only with word 'and' at line 4; granted as to Section 1210(b); denied as to Section 1211(a), where impounding per 1210(a)(1), same for (c) and (d); denied as to Section 1212, where impounded per 1210(a)(1); denied as to Section 1213 where impounded per 1210(a)(1); moot as to 1211(b)." Defendants County of Los Angeles and Peter J. Pitchess appeal the above order.

The majority opinion herein relying primarily on *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, has concluded that all of the sections of ordinance No. 11516 are valid *except* the following enforcement provisions: section 1210 (impounding of news racks); section 1211 (return of impounded news racks); section 1212 (hearings); and section 1213 (appeal after hearing). (See fn. 2, *ante.*)

---

[3]Plaintiff Gluck, represented by Attorneys Robin Meadow and Fred Okrand of the ACLU, brought this action seeking a preliminary injunction of the ordinance as a single taxpayer of Los Angeles County pursuant to Code of Civil Procedure section 526a and *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].

"The primary purpose of [section 526a], originally enacted in 1909, is to 'enable *a large body of citizenry* to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Blair* v. *Pitchess, supra,* 5 Cal.3d at pp. 267-268, italics added.)

"To entitle a plaintiff to injunctive relief, the burden is upon him to prove actual or threatened injury, and a court may not infer this from mere proof of acts intended to harm. This omission is not cured by the general statements of the complaint 'that great and irreparable injury will result' from the acts described by the pleader. It has always been the rule in this state that such averments, standing alone, have no probative force and cannot be made the basis for injunctive relief. Facts concerning the irreparable injury which, it is asserted, will result to the complainant unless protection is extended to him must be pleaded in order that the court may consider whether his apprehensions are well founded. A mere allegation that such injury will result is not sufficient. [Citations.] A complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of. [Citations.]" (*E. H. Renzel Company* v. *Warehouseman's Union* (1940) 16 Cal.2d 369, 373 [106 P.2d 1].)

Accordingly, although this issue is not raised on appeal, since plaintiff is apparently not a news rack owner, does not fall within the primary purpose of section 526a as defined in *Blair*, and has not sufficiently alleged facts showing irreparable injury to herself or anyone else resulting from the provisions of county ordinance No. 11516, the court below, in my opinion, was in error in enjoining the enforcement of any of the provisions of the ordinance by reason of lack of standing and defective pleading.

We should be extremely cautious of enjoining law enforcement officials from enforcing an ordinance approved and adopted by duly elected representatives of the people for the purpose of protecting public welfare and morality. (*City of Santa Monica* v. *Superior Court* (1964) 231 Cal.App.2d 223, 226 [41 Cal.Rptr. 824]; *7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746].) In my view the Board of Supervisors of Los Angeles County has made a good faith effort to and has enacted a valid news rack control ordinance, including the enforcement provisions and has adroitly circumvented the language in the City of Los Angeles' ordinance (see fn. 1, *ante*) which was found to be constitutionally objectionable in both *Carl* v. *City of Los Angeles, supra,* 61 Cal.App.3d 265, and *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294.

In reconciling the holding and dicta in *Kash Enterprises* with the case at bench, it should be noted that the *Kash Enterprises* court was confronted only with the impounding of a news rack for violation of the "time, place and manner" provisions of the Los Angeles City municipal ordinance. The "sexually explicit display" provisions had previously been declared unconstitutional in *Carl.* Here, both the "time, place and manner" and the "sexually explicit display" provisions are present and have unanimously been held valid by this court. In my view the seizure or impound provisions have been tailored in respect to each such violation to meet or to supply a reasonable substitute for the concerns articulated in *Kash Enterprises.*

In *Kash Enterprises,* the Supreme Court said at page 313 (19 Cal.3d at p. 313): "Our holding in this regard, however, should not be misunderstood. We have no doubt that the City of Los Angeles is constitutionally empowered to provide for the immediate seizure, without prior notice or hearing, of any news rack that poses a danger to pedestrians or vehicles. Moreover, even when no such danger is present, the city may authorize the seizure of an offending news rack so long as the owner has been notified of the imminent seizure and has been given a reasonable opportunity *either* to cure the violation *or* to contest the seizure in an informal administrative forum. Finally, the city may, of course, impose alternative, constitutionally less intrusive sanctions, such as fines, to encourage owners to police their own news racks to insure that the racks remain in compliance with the city's reasonable time, place and manner regulations. Obviously, however, it is for the city, and not this court, to decide what enforcement procedure, if any, should be established to replace the constitutionally deficient procedure contained in the present ordinance." (Italics added.)

The seizure provisions pertaining to "time, place and manner" violations in the instant case are clearly compatible with and sanctioned by the first two sentences quoted above from *Kash Enterprises.*

In the instant case if the violation constitutes "a dangerous or hazardous condition," the offending news rack can be immediately removed and impounded but a "written notice" *must* be sent to the permittee within two working days which brings the other provisions pertaining to recovery, hearing and appeal into play.

Also the seizure and impounding provisions of the county ordinance pertaining to "time, place and manner" violations *other than* those constituting "a dangerous or hazardous condition" specifically require that a "tag" first be attached to the offending news rack and a "written notice" of the violation sent within two working days to the permittee who has seven days from the date of the "tagging" to correct the violation. Thus, the county ordinance not only affords violators falling into the latter category a reasonable time "to cure the violation" as discussed in *Kash Enterprises,* but also affords the permittee in the conjunctive (not disjunctive as in *Kash Enterprises*) under the other provisions a post-seizure means of recovery, hearing and appeal. Moreover, impound fees need not be paid if the seizure was unwarranted.

As previously noted, the *Kash Enterprises* case did not have before it impound procedures for a "sexually explicit display" violation. However, in *Kash Enterprises* the Supreme Court in discussing "First Amendment due process" said: "Past cases have pointed to the potential for such arbitrary or discriminatory suppression of protected expression at the hands of individual police officers as a primary justification for requiring that enforcement procedures in the First Amendment area be structured so as to minimize the danger of such unilateral censorship. [Citations.] . . . subdivision (5) makes no attempt to limit an individual officer's summary seizure authority to situations in which immediate removal is mandated by public need [citations]; . . ." (19 Cal.3d at pp. 312-313.)

Los Angeles County Ordinance No. 11516 has eliminated the above concerns by specifically requiring that *before* an offending news rack can be seized and impounded due to a "sexually explicit display" violation, the sheriff or his designate *must* first obtain a *written order* from a *magistrate* which is supported by affidavits or other evidence sufficient to show a prima facie violation and a written notice of the impounding must be sent to the permittee within two working days. In addition, a

complaint for violation must be filed within 14 days of the impound and if it is not filed within that period, the news rack and all contents must be released to the permittee or the owner on proof *without payment of impound fees.* The "potential" for "arbitrary or discriminatory suppression of protected expression" at the hands of individual police officers under the provisions of the county ordinance has thus been eliminated by the requirement that a magistrate must first authorize the removal of any news rack containing a "sexually explicit display." Furthermore, the sexually explicit displays that are prohibited are described in the ordinance with such *specificity* as to further greatly reduce, if not completely remove, the chance of suppression of *legally protected* expression. (See fn. 2, *ante.*)

Of paramount importance here is the fact that the violations sought to be controlled are of a *continuing* nature and the impound provisions (see fn. 2, *ante*) are necessary to render effective enforcement. By reason of the *continuing* nature of any violations to require the full panoply of due process requirements in the classic sense would, as a practical matter, render an important aspect of the enforcement provisions ineffectual. In the balance in dealing with this complex problem it does not appear unreasonable to me to require the owner of a news rack which is claimed to be in violation of the ordinance to take the initiative to recover his rack rather than subjecting thousands of citizens to the *continuing* violation awaiting the slowly grinding wheels of justice.

Moreover, assuming the value of one's personal liberty is at least on par with First Amendment rights, I see no significant differences between the procedures provided in ordinance No. 11516 for the seizure, recovery and hearings provided in respect to an inanimate object such as a news rack and those for individuals which have been held constitutional. When an individual is apprehended pursuant to an arrest warrant (by analogy here seizure of a news rack on order of a magistrate for violation of the "sexually explicit display" provision) or an arrest without warrant where the offense was committed in the presence of a peace officer (by analogy here to the seizure of a news rack for violation of the "time, place and manner" provisions), the individual in both instances must part with funds similar to an "impound fee" by way of interest lost on posting of cash bail or a bail bond premium before his person is released on bail (from "impound"). In both instances the individual is afforded only a post-seizure hearing. It is obvious that the procedures are made less onerous to the news rack owner even though the violations are of a continuing nature than to an individual charged with a single act constituting a misdemeanor.

Finally, suffice to say I do not share the belief expressed in the majority opinion to the effect that the ordinance "permits the county to hold racks for up to 30 days at whim" nor the jaundiced view that "the scheme is a transparent one to force payment of impound fees irrespective of the propriety of the seizure." Clearly the members of the Board of Supervisors of Los Angeles County who passed the ordinance acted in good faith, discharging their responsibilities to the electorate. The record also shows that those government officers charged with its enforcement will act in a responsible manner in discharging their duties as evidenced by the administrative guidelines promulgated by the road department.[4]

---

[4]The record contains a declaration by Donald L. Allen, senior construction inspector for the County of Los Angeles in charge of permit issuance, which states that "no fee is required from an applicant for issuance of a permit for a news rack"; that applications can be made by telephone for a permit; that if application is made in person, it ordinarily takes only a few minutes; and that if the application is filled out, issuance is *automatic* and no application received had been rejected.

The record also contains a "Memorandum" dated May 10, 1977, to all permit offices from D. G. Dreher, assistant chief deputy, entitled "Guidelines for Field Enforcement of News Rack Ordinance" which states:

"All Road Department personnel shall *strictly adhere to the following guidelines* in the enforcement of the News Rack Ordinance.

"1. Because of limited manpower, initial enforcement of the ordinance will be made only in response to complaints.

"2. Road Department personnel will not remove any news racks without prior approval from the Road Commissioner.

"3. Our enforcement shall be concerned strictly with the place, manner and location of the news rack as detailed in Section 1207, and the permit requirements of the Ordinance.

"4. Under no circumstances will the contents of the news rack be considered by this Department as a factor in determining whether or not a particular news rack should be removed.

"5. If any news racks are found to be in a potentially dangerous location, they shall if possible be immediately relocated to a safe location on the highway as close to the site as is practical.

"6. If any news racks are found to be in a technical or minor violation of any provisions of Section 1207 and such violation can be corrected simply by movement of the news rack a reasonable distance, they shall be so moved so as to cure the violation.

"7. Relocation or movement of any news rack in violation shall not involve the shuffling of other complying news racks so as to place any other news rack in violation.

"8. In the event of a situation which we cannot immediately remedy, the matter will be referred to the Road Commissioner for a decision. Only the Road Commissioner or his designate may authorize the removal of any news rack.

"9. All contacts to the Road Commissioner shall be made through the Construction Division office to Assistant Chief Deputy, D. G. Dreher.

"10. Any complaint received pertaining to contents of the news rack shall be referred to the Sheriff. Should it become necessary to refer a complaint to the Sheriff, the person making the referral will immediately notify the Construction Division office of the complaint and the referral.

"11. If the Road Commissioner authorizes the removal of any news rack, due to a violation which we cannot immediately remedy but which does not constitute a potential hazard the following procedure will be followed:

"A. The news rack shall be tagged with a standard tag which we will provide and will

The citizens of the City and County of Los Angeles through their elected representatives in the city council and on the board of supervisors have tried for seven long years to formulate an ordinance satisfactory to the judiciary to cope with the proliferating problems posed by sidewalk news racks. Enough is enough. Under a representative form of government and in the letter and spirit of the four corners of the Constitution, the purpose of which is plainly described in the very preamble, I would hold that the enforcement provisions pertaining to seizure and impounding of news racks which violate either the "time, place and manner" or the "sexually explicit display" provisions satisfactorily meet procedural due process requirements and are adequately sensitive to First Amendment rights.

Respondent's petition for a hearing by the Supreme Court was denied August 15, 1979. Newman, J., was of the opinion that the petition should be granted.

---

contain the following information:
      "Date:
      "Location of Violation:
      "Violation:
      "If the violation is not corrected within seven (7) days of the above date this news rack(s) will be removed and impounded at 1525 Alcazar Street, Los Angeles, California 90033

"B.  Send a written notice of the violation within two (2) working days to the permittee, if known. (sample No. 1 attached)

"C.  If the violation is not corrected within seven (7) days of the date on the tag, we shall notify Road Services Division to immediately remove and impound the news rack at our Central Yard.

"12. If the Road Commissioner authorizes immediate removal due to a noncorrectable potential hazard, the procedure will be as follows:

"A.  Road Services Division will be notified to immediately remove and impound the news rack at our Central Yard.

"B.  Send a written notice to the permittee, if known, within two (2) working days. (sample No. 2 attached)

"SAMPLE NO. 1

"NAME
"X
"X
"X
"X

"VIOLATION OF HIGHWAY<br>"PERMIT ORDINANCE<br>"CHAPTER XII, SECTION

    "This is to inform you that your news rack located at _____ (location) is in violation of the Highway Permit Ordinance No. 3597, Chapter XII, Section _____.

    "We have placed a tag on your news rack on _____ (date). If the violation is not corrected within seven (7) days of the date on the tag, this Department

will pick up the news rack and impound it at our Central Yard, 1525 Alcazar Street, Los Angeles, California.

"Should impounding become necessary due to your failure to correct the above violation and you wish to regain possession of the news rack together with its contents and all monies, if any, you may do so by paying an impound fee of $25 plus the reasonable cost of impounding, removing, and storing the news rack, if any, in excess of $25, within thirty (30) days from the date of removal and impounding.

"In addition, you may be subject to a fine not exceeding $500. You may request a hearing on the impoundment of your news rack as provided for in Chapter XII, Section 1212 of this Ordinance.

"If you have any questions regarding this matter, please call _____ at _____ (tel no) _____.

"Very truly yours,
"I. L. MORHAR
"Road Commissioner

"SAMPLE NO. 2

"X
"X
"X
"X

"VIOLATION OF HIGHWAY
"PERMIT ORDINANCE
"CHAPTER XII, SECTION -------

"This is to inform you that your news rack located at ---------------- (location) was in violation of the Highway Permit Ordinance No. 3597, Chapter XII, Section ---------- and was picked up and impounded at our Central Yard, 1525 Alcazar Street, Los Angeles, California.

"If you wish to regain possession of the news rack together with its contents and all monies, if any, you may do so by paying an impound fee of $25 plus the reasonable cost of impounding, removing, and storing the news rack, if any, in excess of $25 within thirty (30) days from the date of removal and impounding.

"In addition, you may be subject to a fine not exceeding $500.

"You may request a hearing on the impoundment of your news rack as provided for in Chapter XII, Section 1212 of this Ordinance.

"If you have any questions regarding this matter, please call ------------ at --------- (tel no).

"Very truly yours,
"I. L. MORHAR
"Road Commissioner."