[Civ. No. 46223. Second Dist., Div. Five. Aug. 18, 1976.]

JOAN CARL, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Richard L. Jacobson, Fred Okrand and Kenneth L. Chotiner for Plaintiff and Appellant.

Burt Pines, City Attorney, Ward G. McConnell and Rand Schrader, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**KAUS, P. J.**—Until a few years ago, sidewalk newsracks were nothing but a convenience for the vendee, as well as an economical means of distribution for the vendor. Lately, however, because their proliferation has made them a major traffic hazard for pedestrians and their contents indicate that they are a handy way of peddling smut, they have aroused the concern of local legislatures and become the subject of prohibitory and regulatory ordinances. It is understandable that their transformation from a convenience to a municipal problem does not always trigger legislative responses which successfully avoid the constitutional pitfalls inevitable in an area that involves freedom of speech and of the press—particularly when the state Legislature has already preempted much of the field.

Although proliferation problems should be relatively easy to solve—a newsrack containing the Wall Street Journal obstructs a sidewalk as much as one that offers erotica—two anti-proliferation ordinances have already foundered on First Amendment shoals. (*Remer* v. *City of El Cajon,* 52. Cal.App.3d 441 [125 Cal.Rptr. 116]; *California Newspaper Publishers Assn., Inc.* v. *City of Burbank,* 51 Cal.App.3d 50 [123 Cal.Rptr. 880].) Inevitably, ordinances aimed at the contents of publications sold in newsracks pose far graver constitutional problems, not only because they attempt to regulate expression, but also because—unavoidably perhaps—they duplicate preemptive state legislation. This case illustrates the problem.

The issue is the constitutionality of section 1 of Los Angeles City Ordinance No. 145,948. Section 2 recites that the people of Los Angeles "find and declare" that newspapers showing "nude human bodies" are "a public nuisance," and that "the use of unattended newsracks creates a condition wherein enforcement of the State Law regarding the sale of Harmful Matter to . . . children and youth becomes extremely difficult."

Plaintiff Joan Carl filed a taxpayer's action for declaratory and injunctive relief, alleging, in brief, that the ordinance is unconstitutional. Carl's standing is not challenged.

The trial court granted the city's motion for summary judgment. We reverse with directions to the trial court to enter judgment in favor of plaintiff.[1]

Section 1 of the Los Angeles ordinance, which amends section 42.00(f) of the Los Angeles Municipal Code, consists of two parts. Subsection (7) provides: "No person shall sell, offer for sale, or keep or maintain for sale any Harmful Matter, as such term is defined in Section 313, Chapter 7.6, Title 9, Part 1 of the Penal Code of California, in any newsrack on any public sidewalk unless such sale is made, or offer of sale is maintained, in the presence of an adult person authorized to prevent the purchase of such matter by a minor."

Subsection (8) provides: "No person shall sell, offer for sale, or keep or maintain any newspaper or news periodical in any newsrack on any sidewalk in such manner as to expose to the public view any photograph, cartoon or drawing, contained within such publication, displaying any of the following: . . ." and lists, in brief, naked bodies other than those of children.[2]

Although both subsections deal, generally speaking, with the distribution of publications through newsracks, they present quite different problems under the state and federal Constitutions. We therefore consider them separately.

---

[1] In May 1975, on plaintiff's application, we issued a writ of supersedeas enjoining the trial court from dissolving a previously issued preliminary injunction.

[2] In full: "The genitals, pubic hair, buttocks, natal cleft, perineum, anal region or pubic hair region of any person other than a child under the age of puberty; . . . Any portion of the breast, at or below the areola thereof, of any female person, other than a child under the age of puberty." (Los Angeles Municipal Code, § 42.00, (f) (8) par. 1, 2.)

## Subsection (7)

Although plaintiff attacks subsection (7) on various constitutional grounds, it is quite apparent that the Legislature has preempted the field with the so-called "Harmful Matter Statute." (Pen. Code, §§ 313-313.5)

The Harmful Matter Statute purports to regulate the distribution of material which, generally using the California definition of obscenity (Pen. Code, § 311, subd. (a); *Bloom* v. *Municipal Court,* 16 Cal.3d 71, 75-76 [127 Cal.Rptr. 317, 545 P.2d 229]), is "utterly without redeeming social importance *for minors.*" (§ 313. (Italics added.))

After defining "matter" in section 313 to encompass every conceivable mode of communication,[3] section 313.1, subdivision (a), then provides: Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit any harmful matter to the minor is guilty of a misdemeanor." "Distribution" is defined as any "transfer [o]f possession of, whether with or without consideration." (Pen. Code, § 313, subd. (d).)

The principles which govern our consideration of subsection (7) were summarized by the Supreme Court in *Lancaster* v. *Municipal Court,* 6 Cal.3d 805, 807-808 [100· Cal.Rptr. 609, 494 P.2d 681], as follows: ▮ "It is settled that a local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. [Citations.] Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' [Citations.]"

▮ We think it is obvious that section 313.1 of the Penal Code preempts the field of offering and selling harmful matter to minors. The

---

[3] " 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription, or mechanical, chemical, or electrical reproduction or any other articles, equipment, machines or materials." (§ 313, subd. b.)

parallel decisions holding that the statutes relating to adult obscenity preempt the field leave no room for argument on this point. (*Whitney* v. *Municipal Court*, 58 Cal.2d 907, 909-911 [27 Cal.Rptr. 16, 377 P.2d 80]; *In re Moss*, 58 Cal.2d 117, 119 [23 Cal.Rptr. 361, 373 P.2d 425]; *Spitcauer* v. *County of Los Angeles*, 227 Cal.App.2d 376, 379 [38 Cal.Rptr. 710]; *Mier* v. *Municipal Court*, 211 Cal.App.2d 470, 472-473 [27 Cal.Rptr. 602].)

"A local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by state law." (*In re Moss, supra*, 58 Cal.2d 117, 118; see also, *In re Loretizo*, 59 Cal.2d 445, 446 [30 Cal.Rptr. 16, 380 P.2d 656]; *In re Lane*, 58 Cal.2d 99, 104-105 [22 Cal.Rptr. 857, 372 P.2d 897]; *Abbott* v. *City of Los Angeles*, 53 Cal.2d 674, 682 [3 Cal.Rptr. 158, 349 P.2d 174, 82 A.L.R.2d 385].) A brief analysis of section 313.1 of the Penal Code demonstrates how subsection (7) conflicts with it by criminalizing conduct connected with the distribution of harmful matter that is not prohibited by section 313.1.

First, section 313.1 prohibits offers and actual sales of harmful matter to·minors. (Pen. Code, § 313.1: "Every person who . . . distributes, . . . or offers to distribute . . .") Subsection (7) similarly applies to anyone who ". . . shall sell, offer for sale . . . any Harmful Matter . . . ." but extends the prohibition to persons who merely "keep or maintain for sale any Harmful Matter"—a stage in the distribution process reached before there is even an offer to someone, and which is excluded from section 313.1.

Moreover, section 313.1 contains two distinct scienter requirements not contained in the ordinance. First, the defendant must act "knowingly," that is, with awareness "of the character of the matter." (Pen. Code, § 313, subd. (e).) We can assume that this scienter requirement, omitted from subsection (7), could be read into the ordinance. (*In re Cooper*, 53 Cal.2d 772, 781-782 [3 Cal.Rptr. 140, 349 P.2d 956].)[4] The second scienter requirement of section 313.1 relates directly to the evil at which the statute is directed: the offer or the sale must be made "with knowledge that a person is a minor" or without exercise of "reasonable care in ascertaining the true age of a minor . . . ." Again no parallel requirement appears in subsection (7). This omission, to the extent that a violation of subsection (7) may involve an offer or a sale to a minor—and as we have noted it need not—is far more serious, since its effect is that the

[4]Otherwise, subsection (7) would be unconstitutional for reasons more fundamental than preemption. (*Smith* v. *California*, 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215].)

ordinance requires the distributor to be an insurer of the nonminority of the offeree or buyer, a far more onerous burden than that imposed by the statute, which requires some proof of fault: actual knowledge, or, at least, lack of care.

Precisely how these differences affect a defendant charged with a violation of section 313.1 by means of newsracks depends to some extent on the proper interpretation of section 313.1 to that particular method of distribution—a matter not before us. Just what is it that a distributor, who leaves harmful matter in a newsrack and walks away from it, must do to ascertain that his offer will not be deemed addressed to minors? Perhaps—though we have doubts on that score—a sticker such as we see on cigarette machines will do. Perhaps nothing less than an attendant——not necessarily, of course, an adult—will suffice. Certain it is, however, that there can be no violation of section 313.1 unless there is either an offer or a sale to a particular minor.

Subsection (7), on the other hand, goes much further: it is violated the very moment harmful matter is kept or maintained for sale in an unattended newsrack, even before its contents are "offered" to any potential buyer who approaches it. In any event, there is no requirement that the offer or the sale be made to a minor.[5] This broad sweep of the ordinance is, of course, the reason why it does not—indeed cannot—contain the second of the two scienter elements of section 313.1: subsection (7) requires no minor to whom it relates.

Unquestionably, therefore, subsection (7) imposes additional requirements on distributors of harmful matter not found in section 313.1. Under the authorities cited, it is therefore void. To be sure, enforcement of subsection (7) would stop violations of section 313.1 before they occur, or, at least, would make actual violations easier to prove. Nevertheless, where the field has been preempted, such prophylactic, supplementary local legislation is all the more void. As Chief Justice Gibson said in his concurring opinion in *In re Lane, supra,* 58 Cal.2d at pages 111-112: "It

---

[5] The city considers the absence of a requirement that there be an offer or a sale to minors a virtue. It argues: "The sale to minors is not the subject of the Ordinance as it is the subject of Penal Code Section 313.1; the subject of the Ordinance is placement of adult attendants at newsracks containing harmful matter on the city streets."

This argument is hard to follow, since the constitutional validity of any law dealing with publications that are not obscene for adults depends precisely on the state's power " 'to protect the welfare of children.' " (*Ginsberg* v. *New York,* 390 U.S. 629, 640 [20 L.Ed.2d 195, 204, 88 S.Ct. 1274].)

has been suggested that the ordinance was not intended to create a crime in addition to that punishable by state law but was designed and is enforced as a law against prostitution where prostitution is difficult to prove. This view of the ordinance, however, makes it even clearer that the local regulation is invalid." (See also *People* v. *Franks,* 226 Cal.App.2d 123.)

The city also argues that since it is chartered and the regulation of newsracks on city streets is a municipal affair, subsection (7) must be upheld. (Cal. Const., art. XI, § 5; *City of Santa Clara* v. *Von Raesfeld,* 3 Cal.3d 239, 245 [90 Cal.Rptr. 8, 474 P.2d 976]; *Bishop* v. *City of San Jose,* 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137]; *Eckl* v. *Davis,* 51 Cal.App.3d 831, 842, fn. 5 [124 Cal.Rptr. 685].)[6]

It is unnecessary to decide the extent, if any, that the regulation of sidewalk sales from newsracks is a municipal affair, immune from state legislation. Obviously, subsection (7) is not a regulation of newsrack sales as such, but an attempt to regulate such sales based on content. Entirely different issues would be presented if subsection (7) were a "time, place, and manner" ordinance governing all newsrack sales regardless of content.

SUBSECTION (8)

Our disposition of subsection (7) has assumed the power of the state to prevent the dissemination of harmful matter to minors. (See *Ginsberg* v. *New York, supra,* 390 U.S. 629.) Subsection (8) presents a basic First Amendment problem.

■ The subject matter of subsection (8) is "any photograph, cartoon or drawing" displaying nudity, unless the subject is a child under the age of puberty. In other words, a newspaper sold in a newsrack which exposes to public view a line drawing of the Venus of Milo is prohibited.[7]

---

[6]We note, but need not resolve, the apparent tension between the authorities relied on by the city and the line of cases of which *Lancaster* v. *Municipal Court, supra,* 6 Cal.3d 805, 807-808, is an example. (See Sato, *"Municipal Affairs" in California,* 60 Cal.L.Rev. 1055, 1072-1075, 1085-1089, 1096-1098.)

[7]The record shows that on March 14, 1974, a few weeks before the questioned ordinance went into effect, the Los Angeles Times reprinted, just below its masthead, a reproduction of Rubens' "Venus Wounded by a Thorn." The painting shows a nude Venus surrounded by nude cupids. While the Times could have got away with the cupids, Venus would have called for an arrest.

Obviously, subsection (8) is a major incursion into constitutionally protected expression. "[N]udity alone is not enough to make material legally obscene . . . ." (*Jenkins* v. *Georgia,* 418 U.S. 153, 161 [41 L.Ed.2d 642, 650, 94 S.Ct. 2750]; see also *In re Panchot,* 70 Cal.2d 105, 107 [73 Cal.Rptr. 689, 448 P.2d 385] [crude photographs of nude females posing singly, emphasizing various parts of the body]; *People* v. *Noroff,* 67 Cal.2d 791, 794 [63 Cal.Rptr. 575, 433 P.2d 479] [photographs of naked adults in poses contrived to preserve genital exposure at the expense of aesthetic considerations].) Subsection (8) contains no qualifications whatever: The depicted nudity need not have sexual arousal, gratification or affront as its purpose or effect (*In re Smith,* 7 Cal.3d 362, 366 [102 Cal.Rptr. 335, 497 P.2d 807]; it need not be depicted in a context which satisfies the constitutional standards of "harmful matter," let alone obscenity; it need not even be what the United States Supreme Court has recently described as "material that is on the border line between pornography and artistic expression. . . ." (*Young* v. *American Mini Theatres, Inc.* (1976) 427 U.S. 50, 61, [49 L.Ed.2d 310, 320, 96 S.Ct. 2440].)

We find subsection (8) indistinguishable from the ordinance held unconstitutional by the United States Supreme Court in *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268].

*Erznoznik* involved a Jacksonville ordinance that prohibited any drive-in theater from showing any films in which nude persons appeared, if the film was visible from any public street or public place (422 U.S. at pp. 206-207 [45 L.Ed.2d at pp. 129-130]). The city in that case, as does respondent city in this case, contended that it had a right to protect its citizens against unwilling exposure to materials that may be offensive. (*Id.,* at p. 208 [45 L.Ed.2d at p. 130].)

The court, relying on the principle that a state or municipality "may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content" (*id.,* at p. 209 [45 L.Ed.2d at p. 130]), found that the Jacksonville ordinance discriminated among movies "solely on the basis of content" (*id.,* at p. 211 [45 L.Ed.2d at p. 132]) and that such discrimination could not be "justified as a means of preventing significant intrusions on privacy. The ordinance seeks only to keep these films from being seen from public streets and places where the offended viewer readily can avert his eyes." (*Id.,* at p. 212 [45 L.Ed.2d at p. 132].)

If the interest in protecting the unwilling public from the giant screens of drive-in movies was insufficient to justify the restriction, the attempt by Los Angeles to restrict the display of protected materials in newsracks is an a fortiori case. Jacksonville argued that a citizen could not readily avert his eyes from an outsize screen (422 U.S. at p. 221 [45 L.Ed.2d at p. 138], dis. opn.). To be "offended" by nudity in a publication set in a newsrack, the citizen would quite literally have to be looking for such offense.[8]

In *Erznoznik* the city also asserted that the ordinance was a valid exercise of its power to protect children. (*Id.,* at p. 212 [45 L.Ed.2d at pp. 132-133].) The court quickly disposed of that contention: "In this case, assuming the ordinance is aimed at prohibiting youths from viewing the films, the restriction is broader than permissible. The ordinance is not directed against sexually explicit nudity, nor is it otherwise limited. Rather, it sweepingly forbids display of all films containing *any* uncovered buttocks or breasts, irrespective of context or pervasiveness. Thus, it would bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous. The ordinance also might prohibit newsreel scenes of the opening of an art exhibit as well as shots of bathers on a beach. Clearly all nudity cannot be deemed obscene even as to minors. [Citation.] Nor can such a broad restriction be justified by any other governmental interest pertaining to minors." (*Id.,* at p. 213 [45 L.Ed.2d at p. 133]. Italics in original.)[9]

Except for the reference to "a baby's buttocks," the Supreme Court's language and holding fully apply to subsection (8).

The city's attempts to distinguish the Jacksonville ordinance involved in *Erznoznik* and subsection (8) are not convincing.

The city points to the great number of newsracks in Los Angeles—over 7,000, we are told—in contrast to the few dozen drive-in theatres. This

---

[8]Apart from the greater obtrusiveness of a movie screen, as compared to a paper in a newsrack, a comparison between the type of expression prohibited in *Erznoznik* and the subject matter of subsection (8) makes this an easier case. It seems clear that "the average person, applying contemporary community standards" (*Miller* v. *California,* 413 U.S. 15, 24 [37 L.Ed.2d 419, 431, 93 S.Ct. 2607]) would be more easily offended by nudity photographically reproduced in a motion picture, than by nudity captured in cartoons or drawings.

[9]It is worth noting, however, that if a newsrack exhibits "harmful matter" to anyone, including minors, who cares to look, a violation of section 313.1 of the Penal Code which prohibits exhibiting, may have taken place.

distinction, however, is quite irrelevant to the constitutional principle on which *Erznoznik* was decided. Free expression is entitled to constitutional protection even if uttered with some frequency.

The city argues that newsracks may be "placed on virtually every street within the City." The answer is that if there are too many newsracks in Los Angeles, the constitutional method of decreasing their number is a "time, place, and manner" restriction, neutral as to content. (*Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92, 98 [33 L.Ed.2d 212, 218, 92 S.Ct. 2286].)

The city also claims that subsection (8) is valid because it does not prevent a newspaper publisher from showing nudity anywhere except on the exposed part of the front page. This, of course, is just another way of saying that the City of Los Angeles may tell newspaper publishers where they may print matter which the First Amendment permits them to print anywhere they please. Censorship is censorship.

Allied to this last argument is a contention that it is a very slight burden on a newspaper publisher to display nudity on an inside page, while a motion picture exhibitor would find it impossible to preserve the intellectual integrity of a film by cutting out nude scenes. There are several short answers to this contention: First, gratuitous nudity of questionable value to a film's "message" is at least as prevalent in motion pictures as it is in newspapers. Second, the Jacksonville ordinance did not—as the argument implies—purport to force the motion picture exhibitor to eliminate nudity from films shown in drive-in theatres. It merely required him to put up a higher fence or plug up some knotholes.

Nevertheless, the city's arguments in defense of subsection (8) are of great help, because they reveal the relatively narrow target at which the city really aimed in enacting subsection (8). Thus, the city attorney points out that "the exposure of genitals on the front page of newspapers in newsracks is constant and unchanging for the entire time the paper is in the rack. That is, the photograph is a *permanent* and *unmoving* image." (Italics in original.) Later, the city argues that "it is entirely possible for this Court to distinguish drive-in theatres from *photographs of adults with their genitals exposed on the front page of newspapers in newsracks on city streets* . . . ." (Italics added.)

Clearly these arguments are addressed to an ordinance that has not yet been enacted. The question before us might be entirely different if subsection (8) dealt only with photographs of genitals, rather than with any form of reproduction of any part of the adult body usually covered in public. Whether such a narrowly drawn ordinance would pass muster we need not say.[10] Even if it would however, subsection (8), as enacted is overbroad, since it is "susceptible of sweeping and improper application" (*N.A.A.C.P.* v. *Button,* 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328]), and cannot be saved by the fact that it also covers matter which the city may constitutionally prohibit. (*Coates* v. *Cincinatti,* 402 U.S. 611, 614 [29 L.Ed.2d 214, 217-218, 91 S.Ct. 1686]; *Burton* v. *Municipal Court,* 68 Cal.2d 684, 696 [68 Cal.Rptr. 721, 441 P.2d 281].)

In view of our conclusion that subsection (8) violates the precepts of *Erznoznik,* it is unnecessary to address plaintiff's claim that it, too, impinges on matter preempted by state law.

As we noted at the outset, the problem of accommodating efforts to deal with undesirable situations created by proliferation and content of newsracks to settled principles of constitutional law, is relatively new. It is not surprising that this early attempt to find an acceptable solution should fail—particularly since *Erznoznik* was not decided until a year after ordinance 145,948 became effective. Obviously future municipal efforts to curb sidewalk voyeurism while avoiding both the rock of free expression and the whirlpool of preemption, would have a greater chance of survival if the Legislature expressly evidenced an intent to permit local regulation. (Cf. *Crownover* v. *Musick,* 9 Cal.3d 405, 416 [107

---

[10]The City may find encouragement in *Young* v. *American Mini Theatres, Inc., supra,* 427 U.S. 50 [49 L.Ed.2d 310]. There, the Supreme Court upheld a Detroit zoning ordinance which differentiated between "motion picture theatres which exhibit sexually explicit 'adult' movies and those which do not." (427 U.S. at p. 52 [49 L.Ed.2d at p. 315].) The ordinance defined the restricted establishments based on uses "characterized by an *emphasis* on matter . . . relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas,' . . ." (Italics added.) Concededly the ordinance applied to constitutionally protected material.

The court distinguished *Erznoznik* by pointing out that the ordinance there involved "broadly prohibited scenes which could not be deemed inappropriate even for juveniles." (427 U.S. at p. 71, fn. 35 [49 L.Ed.2d at p. 327].) Such a broad prohibition is, of course, the major problem of subsection (8).

We do not suggest an exact parallel between the problem with which Detroit dealt successfully in *Young,* and the situation on the sidewalks of Los Angeles which triggered subsection (8). *Young* is, however, a clear indication that the high court is not hostile to some regulation of expression which approaches the borderline of obscenity.

Cal.Rptr. 681, 509 P.2d 497].) Alternatively, of course, the Legislature could itself deal with the problem.

The judgment is reversed with directions to enter judgment for plaintiff.

Ashby, J., and Hastings, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 12, 1976.