[Civ. No. 62692. Second Dist., Div. Five. Feb. 25, 1982.]

AMERICAN BOOKSELLERS ASSOCIATION, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CITY OF PARAMOUNT et al., Real Parties in Interest.

[Civ. No. 62693. Second Dist., Div. Five. Feb. 25, 1982.]

AMERICAN BOOKSELLERS ASSOCIATION, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CITY OF REDONDO BEACH et al., Real Parties in Interest.

COUNSEL

Finley, Kumble, Wagner, Heine, Underberg & Manley, Michael A. Bamberger, Jeffrey A. Charlston and Burton Joseph for Petitioners.

No appearance for Respondent.

Maurice F. O'Shea and Gordon C. Phillips, City Attorneys, for Real Parties in Interest.

OPINION

**STEPHENS, Acting P. J.**—We deal in these two cases with ordinances of the Cities of Paramount and Redondo Beach which restrict display of certain explicit material when such material "has as its primary purpose, design or effect sexual arousal, gratification or affront."

The two ordinances are virtually identical, except for what may be a typographical error in the Redondo Beach ordinance.[1] For convenience sake, citations in the body of this opinion will be to the Paramount ordinance. (Ord. No. 478, Paramount Mun. Code, ch. 11A.) It first provides (§ 11A-1) that the term "harmful matter to minors"[2] has no applicability to the ordinance. It then goes on to describe the type of materials and activities which it does cover as follows: "No person shall for commercial purposes knowingly display, cause to be displayed or permit to be displayed in any business open to minors, unless accompanied by a parent or guardian, any book, magazine, or other publication or matter which depicts any photograph or pictorial representation of any of the anatomical parts of a person's genitals or anus, or any act of sexual intercourse, oral copulation, sodomy, masturbation or bestiality,

---

[1]Which we shall discuss at footnote 10, *infra.*
[2]See Penal Code section 313.

whether actual or simulated, when to the average adult person such photograph or pictorial representation has as its primary purpose, design or effect sexual arousal, gratification or affront; unless such book, magazine, or other publication or matter is sealed in a plastic wrapper, is stapled closed, or is by any other means sealed in such a manner as to reasonably restrict and deter its being opened prior to sale, whereby such photograph or pictorial representation may become exposed to the view of any minor." (§ 11A-2.)

Section 11A-3 of the ordinance exempts from the sealing requirement of section 11A-2 such matter which is "displayed from an area which places such book, magazine, or other publication or matter reasonably beyond the reach of any minor . . . ." Section 11A-3 imposes the further requirement, however, that if the matter appears on the cover of the publication it must be covered from view regardless of whether or not the publication is sealed or placed beyond the reasonable reach of minors.

Section 11A-4 of the ordinance provides that any business which for commercial purposes displays materials described by section 11A-2 and does not seal and/or cover them as required by sections 11A-2 and 11A-3, shall post a notice warning that the business displays such defined materials and that admission to minors is prohibited by law, unless the minor is accompanied by a parent or guardian. The ordinance provides (§ 11A-7) that a parent or guardian is not prohibited from having his child or ward accompany him to a business which displays those materials in a manner other than that permitted by sections 11A-2 and 11A-3, and that a business person is not prohibited from admitting into such a business a minor accompanied by a parent or guardian (§ 11A-9).

Section 11A-2 applies only to those who act "knowingly." While the ordinance does not expressly define the term "knowingly," it does contain a section (11A-6) which discusses evidentiary aspects of scienter.[3]

[3]Section 11A-6 provides: "It shall be a defense in any prosecution for any violation of this ordinance that the book, magazine, or other publication or matter by virtue of its apparent character, outward appearance or contemporary Los Angeles County-wide reputation would not cause the average adult person to reasonably know or suspect that it depicted any photograph or pictorial representation as defined by this ordinance in Section 1. It may also be evidence of a violation of this ordinance in any such prosecution, that the book, magazine, or other publication or matter by virtue of its apparent character, outward appearance, or contemporary county-wide reputation would cause the average adult person to reasonably know or suspect that it depicted any photograph or pictorial representation as defined by this ordinance in Section 11A-2."

Violation of the ordinance constitutes an infraction; except that if a person has twice been convicted of violating the ordinance within the previous two years, the offense becomes a misdemeanor punishable by a $500 fine or a 30-day jail sentence. (§ 11A-12.)

Petitioners sought injunctive relief on the grounds that the ordinances intruded upon an area preempted by state regulation; that they were constitutionally defective because they were vague, overbroad and denied petitioners equal protection of the law; and that their existence had a chilling effect on the exercise of constitutionally guaranteed rights of free speech. We are compelled to hold that to the extent the ordinances deal with subject matter not preempted by state legislation, the regulations which they impose are constitutionally overbroad.

We start our inquiry with the following premises in mind. Though we deal here with restrictions not limited to obscenity, we note that obscenity is not within the class of speech protected by the First Amendment. (*Ginsberg* v. *New York* (1968) 390 U.S. 629 [20 L.Ed.2d 195, 88 S.Ct. 1274]; *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304].) The state may adopt a standard of obscenity applicable to minors which is broader than that applicable to adults and which denies minors access to materials to which adults could not be denied access. (*Ginsberg* v. *New York, supra*, 390 U.S. 629.) "Nevertheless, minors are entitled to a significant measure of First Amendment protection . . . and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them. [Citations omitted.]" (*Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205, 212-213 [45 L.Ed.2d 125, 133, 95 S.Ct. 2268].) "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." (*Erznoznik, supra*, 422 U.S. at pp. 213-214 [45 L.Ed.2d at p. 133].)

The State of California has enacted Penal Code section 313 et seq. which prohibit display or dissemination to minors of matter which appeals to prurient interest, goes substantially beyond customary candor, and taken as a whole is utterly without redeeming social importance *for minors*. Items falling within this description are defined as "harmful matter." This court has held that section 313.1 of the Penal Code preempts the field of offering and selling harmful matter to mi-

nors. (*Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265 [132 Cal.Rptr. 365].)[4]

Dissemination of sexually motivating matter which is not classifiable as obscene also may be regulated, provided that the regulation addresses only the time, place and manner of speech and is necessary to further a significant governmental interest. (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440]; *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121 [155 Cal.Rptr. 435].)

*Gluck, supra*, held that the State of California has not preempted the field of regulating particular material that is not obscene as to minors or adults. The extent to which local governments may or may not regulate certain explicit nonobscene speech is illustrated by *Young, supra*, 427 U.S. 50, and *Gluck, supra*, 93 Cal.App.3d 121.

In *Young, supra*, the Supreme Court, by the narrowest of margins,[5] upheld a city zoning ordinance which restricted the geographical concentration of so-called "adult" movie houses. Four members of the court, speaking through Mr. Justice Stevens, noted that the ordinance was not challenged as imposing a limit on the total number of adult theaters which might operate in the city, that no claim was made that distributors or exhibitors of adult films were denied access to the market or that the viewing public was unable to satisfy its appetite for adult films. They found that under the ordinance the market for the commodity remained essentially unrestrained (427 U.S. at p. 62 [49 L.Ed.2d at p. 321]) and that all that was affected was the place at which adult films might be exhibited (427 U.S. at p. 71 [49 L.Ed.2d at p. 327]).

In a concurring opinion Mr. Justice Powell stated: "The primary concern of the free speech guarantee is that there be full opportunity for expression in all of its varied forms to convey a desired message. Vital to this concern is the corollary that there be full opportunity for everyone to receive the message. [Citations omitted.]" (427 U.S. at p. 76 [49 L.Ed.2d at pp. 329-330].) "... [T]he central First Amendment concern remains the need to maintain free access of the public to the expression.

---

[4]Regulation of the dissemination of adult obscenity has also been preempted by the state. (*Whitney* v. *Municipal Court* (1962) 58 Cal.2d 907 [27 Cal.Rptr. 16, 377 P.2d 80]; *In re Moss* (1962) 58 Cal.2d 117 [23 Cal.Rptr. 361, 373 P.2d 425].)

[5]The opinion of the court was delivered by Mr. Justice Stevens, writing for himself and three other justices. A majority was formed by the concurring opinion of Mr. Justice Powell.

[Citations omitted.]" (427 U.S. at p. 77 [49 L.Ed.2d at p. 330].) Mr. Justice Powell concluded that the ordinance in question was constitutionally valid because there was no indication that it had "the effect of suppressing production of or, to any significant degree, restricting access to adult movies." (427 U.S. at p. 77 [49 L.Ed.2d at p. 330].)

In *Gluck, supra*, 93 Cal.App.3d 121, the court reviewed the constitutionality of an ordinance restricting display in news racks placed on the public streets. It found that there was a valid governmental interest in protecting children and unwilling adults from exposure to particular materials when they were displayed in a manner designed to exploit their content. The court further found that members of the public desirous of purchasing news oriented papers from adjacent news racks could not avert their gaze from the explicit materials while seeking the publication of their choice and thus became captive audience to the exploitative display. Noting that the materials might still be sold from news racks if not displayed in an exploitative fashion, and could still be sold "with exploitation by graphic display from places other than the streets and sidewalks," the court found that the ordinance in question was a reasonable regulation of the time, place and manner of speech. Reasoning that regulation of the use of streets and sidewalks has been a traditional function of local government, the court held that the news rack ordinance did not invade an area preempted by state regulation.

It is against this background that we turn our attention to the ordinances of the real parties Cities of Paramount and Redondo Beach. As we noted earlier, real parties have provided that the term "harmful matter to minors" shall have no application to their ordinances. We presume that this is an effort to avoid the pitfalls of preemption (*Carl v. City of Los Angeles, supra*, 61 Cal.App.3d 265) and conclude that the ordinances are directed only at matter which is not obscene as to minors,[6] and to which minors therefore may not be totally denied access. (*Erznoznik* v. *City of Jacksonville, supra*, 422 U.S. 205.)

Furthermore, we do not deal here with an ordinance that regulates use of public streets and sidewalks, nor with a zoning ordinance which attempts either to geographically concentrate or disperse establishments which sell restricted materials. The ordinances do not constitute a regulation on the "place" of speech. They are not restricted in application to

---

[6]And ipso facto not obscene as to adults.

"adult bookstores" which specialize in such matters.[7] They apply with equal force to any and all retail establishments which display for sale so much as a single publication containing bare-human anatomy in graphic photographs or pictures. Nor are they merely a restriction on the "time" of speech. They apply whenever the materials are displayed. Clearly, they are aimed at the "manner" of speech.

Real parties in interest assure us that the ordinances are a response to the prevalence of such materials and their ready availability in supermarkets, drug stores, and convenience stores as well as in bookstores of all types. The very prevalence of such materials mandates that the delicate task of protecting those who need or want protection must be undertaken with care so that access to such materials is not denied to those who desire it and, more importantly, so that access to nonoffensively oriented materials is not denied in the process. It is in these areas that the subject ordinances are defective.

■ We deal first with the sealing requirement. The ordinances presume that potential purchasers "browse" and real parties confirm that absent the sealing requirement minors as well as adults would be free to do so through such matter. Under the requirement adults, minors who are accompanied by adults and minors alone, are equally precluded from browsing prior to purchase. For this reason the sealing requirement is overbroad.

The requirement that, if not sealed, the materials be placed "beyond the reach of *any* minor"[8] is equally overbroad. Since section 11A-3 provides no guidelines to merchants on how to accomplish this mode of inaccessibility, it appears inescapable that by placing the publications outside the reach of minors they will also be placed outside the reach of many adults and certainly of minors accompanied by adults.

The requirement (§ 11A-3) that when the graphic picture appears on the cover of the publication, it must be covered regardless of whether the publication is sealed or out of reach of children is also overbroad. As the court pointed out in *Gluck, supra*, 93 Cal.App.3d 121, the restriction on the exploitational display of such materials sold from

---

[7]The ordinance in *Young v. American Mini Theatres* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440], regulated adult bookstores as well as adult movie theaters. The court did not discuss the validity of the ordinance as it applied to bookstores.

[8]Paramount Ordinance No. 478, section 11A-3. Italics added.

sidewalk news racks was permissible because graphic displays of such materials was possible from places other than streets and sidewalks. The subject ordinances totally ban graphic displays which may be classified as nonobscene from all retail establishments which admit minors unaccompanied by parents.

■ The option provided by the ordinances for merchants to exclude unaccompanied minors from their premises also fails the test of constitutionality. Minors, whether accompanied by parents or not, cannot be denied access to retail establishments which sell a wide variety of literature, or the necessities of life, simply because such establishments also sell some materials sought to be restricted.

We note that the California Supreme Court has recently held (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115]) that children as a class are protected by the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) against arbitrary exclusion from businesses. This ruling clearly would prohibit the type of wholesale exclusion of minors from supermarkets, drug stores and bookstores authorized by the subject ordinances.[9]

In sum, the ordinances are overbroad because to the extent that they require sealing or removal from reach, they deny access to adults as well as to children and to the extent that they require exclusion of minors from retail premises they deny minors access to items which they have an unfettered constitutional right to enjoy.[10] Ironically, the ordinances are also underinclusive and not rationally tailored to accomplish

---

[9]In *Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113 [170 Cal.Rptr. 419], the court upheld a local ordinance which excluded minors, unless accompanied by parents, from any room in which paraphernalia relating to marijuana and controlled substances was sold or displayed for sale. The paraphernalia ordinance adopted a rational approach to protecting minors while preserving the rights of adults by permitting merchants to admit minors to their premises if the paraphernalia were kept in a separate room to which minors were denied access. The ordinances in the present case do not contain a similar explicit provision for segregating the offending publications.

[10]As we noted at the beginning of this opinion, the Redondo Beach ordinance differs slightly from the Paramount ordinance. Instead of defining the explicit material as consisting of any representation of the anatomical parts of the genitals or anus, as the Paramount ordinance does, the Redondo Beach ordinance defines it as any pictorial or photographic representation of "any of the anatomical parts *or* the genitals or anus . . . ." (Redondo Beach Ord. No. 2301 c.s. § 4-27.02. Italics added.) Whether use of the italicized "or" was intentional or inadvertent, it renders the Redondo Beach ordinance even more overbroad than the Paramount ordinance. (See *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268].)

their asserted purpose (*Young* v. *American Mini Theatres, supra*, 427 U.S. 50, 83 [49 L.Ed.2d 310, 333-334]; *Erznoznik* v. *City of Jacksonville, supra*, 422 U.S. 205, 214-215 [45 L.Ed.2d 125, 133-134]; *Gluck* v. *County of Los Angeles, supra*, 93 Cal.App.3d 121) because they permit the unrestricted sale to minors of the very materials sought to be restricted.

It remains for us to determine whether the petitioners herein have demonstrated the type of irreparable injury which would necessitate the issuance of a preliminary injunction. Petitioner Earl Laurence Drown asserts in the pending complaint for injunctive relief that he is the managing partner of a news agency which sells newspapers, magazines and other publications to drug stores and markets in Los Angeles County, including the Cities of Paramount and Redondo Beach. The remaining petitioners assert that they are trade associations of wholesale and retail book and periodical dealers some of whose members do business in Los Angeles County, although it is not alleged that they do business in Paramount or Redondo Beach. Where, as here, a statute is overbroad on its face and invades areas of free expression protected by the First Amendment, its mere existence on the books may exert a chilling effect on protected speech. (*Dombrowski* v. *Pfister* (1965) 380 U.S. 479 [14 L.Ed.2d 22, 85 S.Ct. 1116].) In such cases traditional rules of standing do not apply. (*Young* v. *American Mini Theatres, supra*, 427 U.S. 50, 60-61 [49 L.Ed.2d 310, 320]; *Dombrowski* v. *Pfister, supra*, 380 U.S. 479.)

In denying petitioners' request for a preliminary injunction, respondent superior court ruled that petitioners had not demonstrated irreparable harm, citing *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579]. Respondent's reliance on *EWAP, Inc.* is misplaced. *EWAP, Inc.* involved a licensing ordinance for picture arcades which denied permits to operate such arcades to anyone who had previously permitted various sex acts to take place in any such arcade. While finding that the ordinance constituted an invalid prior restraint on free speech, the court nonetheless held that a preliminary injunction was unwarranted because the petitioners had not shown that the invalid portions of the ordinance would preclude them from obtaining a permit to run an arcade. ■ The irreparable harm which mandates issuance of the preliminary injunction in the instant case is the pervasive chilling effect which the ordinances have on the exercise of free speech, and is not limited to the petitioners before the court.

Let a peremptory writ of mandate issue directing respondent court to vacate its orders of January 7, 1981, denying petitioners' requests for preliminary injunctions in those matters entitled American Booksellers Association v. City of Paramount, Los Angeles Superior Court case No. C-345815, and American Booksellers Association v. Redondo Beach, Los Angeles Superior Court case No. C-345818, and to enter new and different orders granting preliminary injunctions against enforcement of Paramount Ordinance No. 478 and Redondo Beach Ordinance No. 2301 c.s.

Ashby, J., and Hastings, J., concurred.