TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |
|---|---|
| OPINION | : |
|  | :      No. 94-805 |
| of | : |
|  | :      November 18, 1994 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
|  | : |
| GREGORY L. GONOT | : |
| Deputy Attorney General | : |
|  | : |

_____

THE HONORABLE K. MAURICE JOHANNESSEN, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Are the provisions of Penal Code section 313.1 that will be effective January 1, 1995, concerning the sale of harmful matter in vending machines located on public property constitutional?

CONCLUSION

The provisions of Penal Code section 313.1 that will be effective January 1, 1995, concerning the sale of harmful matter in vending machines located on public property are constitutional.

ANALYSIS

The question presented concerns the constitutionality of a 1994 amendment (Stats. 1994, ch. 38, § 1) to Penal Code section 313.1,[1] regulating the distribution of material which the Legislature has deemed harmful to minors. (See *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265, 269.) Effective January 1, 1995, subdivision (c)(2) of section 313.1 will state:

_____

[1] All undesignated section references are to the Penal Code.

1.          94-805

"Any person who knowingly displays, sells or offers to sell in any coin-operated vending machine that is not supervised by an adult and that is located in a public place, other than a public place from which minors are excluded, any harmful matter, as defined in subdivision (a) of section 313 shall be punished as specified in section 313.4."[2]

In addition, the 1994 amendment provides that certain actions taken by a vendor will serve as a defense in any prosecution based upon section 313.1, subdivision (c)(2). New subdivision (h) of section 313.1 will provide:

"It shall be a defense in any prosecution for a violation of paragraph (2) of subdivision (c) that the defendant has taken either of the following measures to restrict access to the harmful matter by persons under 18 years of age:

"(1) Required the person receiving the harmful matter to use an authorized access or identification card to the vending machine after taking reasonable measures to ascertain that the applicant was 18 years of age or older and has established a procedure to immediately cancel the card of any person after receiving notice, in writing or by telephone, that the code has been lost, stolen, or used by persons under the age of 18 years or that the card is no longer desired.

---

[2]Subdivision (a) of section 313 defines harmful matter as follows:

"`Harmful matter' means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

"(1) When it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition that it is designed for clearly defined deviant sexual groups, the appeal of the matter shall be judged with reference to its intended recipient group.

"(2) In prosecutions under this chapter, where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that matter is being commercially exploited by the defendant for the sake of its prurient appeal, that evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter lacks serious literary, artistic, political, or scientific value for minors."

Section 313.4 provides:

"Every person who violates Section 313.1 . . . is punishable by fine of not more than two thousand dollars ($2,000), by imprisonment in the county jail for not more than one year, or by both that fine and imprisonment. However, if the person has been previously convicted of a violation of Section 313.1 . . . or of [sections 311-312.5 relating to obscene matter], the person shall be punished by imprisonment in the state prison."

"(2) Required the person receiving the harmful matter to use a token in order to utilize the vending machine after taking reasonable measures to ascertain that the person was 18 years of age or older."

Thus, effective January 1, 1995, criminal penalties will apply to the sale or display of harmful matter by means of an unsupervised vending machine located in a public place, other than a public place from which minors are excluded. However, as long as a prospective adult buyer may acquire an access or identification card or procure a token to operate the machine, no violation of paragraph (2) of subdivision (c) will be found.

Because of the expense involved in either providing supervision or converting existing machines to a different access system, a publisher of adult material may find it economically infeasible to continue distributing such material through vending machines. Thus, the restrictions placed on the use of vending machines to sell or display matter that is harmful to minors may decrease such access to that material by adults. As First Amendment protections[3] are applicable to the public distribution of newspapers and periodicals through newsracks (*Kash Enterprises* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 302; *Chicago Newspaper Publishers* v. *City of Wheaton* (N.D. Ill. 1988) 697 F.Supp. 1464, 1466), the issue to be determined is whether the access limitations placed upon adults by the 1994 amendment to section 313.1 are constitutionally permissible.[4]

Our first task in resolving this question is to ascertain which of two constitutional standards relating to government regulation of speech activity is applicable to the 1994 statutory amendment. These standards were described by the United States Supreme Court in *Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 as follows:

"`[R]egulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment.' [Citation.] Enforcement of such a content-based regulation requires a showing that it is `necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' [Citations.] In contrast, `so-called "content-neutral" time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.'" (*Id*., at p. 47.)

---

[3] The First Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides in part: "Congress shall make no law . . . abridging the freedom of speech or of the press . . . ." Similarly, subdivision (a) of section 2 of article I of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

[4] We are not concerned here with the constitutionality of the access prohibition as it pertains to minors. "Harmful matter" has been determined by the state to be obscene as to youths. (*American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197, 203; *Carl* v. *City of Los Angeles, supra*, 61 Cal.App.3d at 269.) "The state may adopt a standard of obscenity applicable to minors which is broader than that applicable to adults and which denies minors access to materials to which adults could not be denied access." (*American Booksellers Assn., Inc.* v. *Superior Court, supra*, 129 Cal.App.3d at 201, citing *Ginsberg* v. *New York* (1968) 390 U.S. 629.)

In *Renton, supra*, the regulation in question was a zoning ordinance which prohibited the location of adult motion picture theatres within 1,000 feet of any residential zone, dwelling, church, park, or school. The court found the challenged ordinance to be content-neutral because it was "aimed not at the *content* of the films shown at `adult motion picture theatres,' but rather at the *secondary* effect of such theatres on the surrounding community [i.e., urban blight]." (*Ibid*.)

On the other hand, in *Sebago, Inc.* v. *City of Alameda* (1989) 211 Cal.App.3d 1372, the court found that a city ordinance restricting the location of public vending machines for adult-oriented newspapers was subject to the more restrictive content-based standard.[5] One aim of the ordinance was to restrict access by minors to adult newspapers, and in this regard the court stated:

> "The aim of restricting the access of minors to adult newspapers concerns direct listener reaction to speech and is thus content-based. As the United States Supreme Court has explained, `Listener's reactions to speech are not the type of "secondary effects" we referred to in *Renton*. To take an example factually close to *Renton*, if the ordinance there was justified by the city's desire to prevent the psychological damage it felt was associated with viewing adult movies, then analysis of the measure as a content-based statute would have been appropriate. The hypothetical regulation targets the direct impact of a particular category of speech, not a secondary feature that happens to be associated with that type of speech.' (*Boos* v. *Barry* (1988) 485 U.S. 312, 321.) Here, the city's concern for exposure of minors to adult newspapers targets the direct impact of such newspapers, not a secondary feature that happens to be associated with their sales from newsracks." (*Id*., at p. 1384.)

The court therefore concluded that the validity of the city ordinance must be determined under the standard applicable to content-based regulation, i.e., that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. (*Id*., at p. 1385.)

As in *Sebago*, subdivision (c) of section 313.1 attempts to restrict access by minors to adult publications (containing harmful matter) and accordingly must be said to be concerned with direct listener reaction to speech. Consequently, its validity must be measured by the more rigorous content-based, rather than content-neutral, standard.

In applying the content-based standard, the court in *Sebago* found that while the city's interest in restricting the unsupervised access of minors to adult bookstore materials was legitimate, the ordinance was too broad to either implicate a *compelling* state interest or to be considered narrowly drawn. The court pointed out that the ordinance was "not limited to obscenity, or even to matters deemed `harmful' to minors by Penal Code section 313, subdivision (a)." (*Sebago, Inc.* v. *City of Alameda, supra,* 211 Cal.App.3d at 1385; fn. omitted.) It therefore found:

---

[5]It was conceded by the city that the publications in question contained no obscenity and were not harmful to minors under state law.

". . . If such a publication is not harmful to minors, there cannot possibly be a compelling state interest in protecting them from it, sufficient to justify a content-based infringement of the First Amendment. Indisputably Alameda has a compelling interest in protecting minors from unsupervised access to *harmful* adult bookstore materials, but this ordinance is not narrowly drawn to achieve that end. It is so broad in scope as to apply to all manner of benign publications." (*Id*., at p. 1386.)

Moreover, the court determined that the ordinance was not sufficiently focused to serve its purported purpose of restricting access:

". . . [T]he relationship between the ordinance and the asserted governmental interest is so tenuous as to fall short of constitutional sufficiency. [Citation.] The ordinance merely moves the newsracks away from residential areas. Any determined teenager can seek out the relocated newsracks. As Sebago points out, it is just as likely, if not more likely, that a minor will purchase an adult newspaper from a newsrack far away from the watchful eyes of parents and neighbors." (*Ibid*.)

While the court ruled that the city ordinance violated the First Amendment to the United States Constitution as well as article I, section 2, of the California Constitution, it specifically noted that "[t]his conclusion does not leave government helpless to protect minors from unsupervised access to harmful pornography through newsracks; it just requires careful drafting by legislators." (*Id*., at p. 1387.)

In contrast to the city ordinance in *Sebago*, the 1994 amendment of section 313.1 is limited to regulating vending machines which purvey material that the state has determined to be harmful to minors. Such focus meets the test of serving a compelling state interest. Nevertheless, that determination does not end our inquiry. In *Sable Communications of California, Inc.* v. *Federal Communications Commission, et al.* (1989) 492 U.S. 115, the United States Supreme Court upheld Congress' ban on "obscene" telephone calls but struck down the federal ban on "indecent" telephone calls. With respect to the latter, the court reasoned as follows:

"Sexual expression which is indecent but not obscene is protected by the First Amendment . . . . The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. (*Ginsberg* v. *New York*, 390 U.S. 629, 639-640 (1968); *New York* v. *Ferber*, 458 U.S. 747, 756-757 (1982).) The Government may serve this legitimate interest, but to withstand constitutional scrutiny, `it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. [Citation.]' [Citation.] It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends.

"In *Butler* v. *Michigan*, 352 U.S. 380 (1957), a unanimous Court reversed a conviction under a statute which made it an offense to make available to the general public materials found to have a potentially harmful influence on minors. The Court found the law to be insufficiently tailored since it denied adults their free speech rights by allowing them to read only what was acceptable for children. As Justice Frankfurter said in that case, `[s]urely this is to burn the house to roast the pig.' *Id*., at 383. In our judgment, this case, like *Butler*, presents us with `legislation not reasonably restricted to the evil with which it is said to deal.' *Ibid*." (*Id*., at p. 126-127.)

Here, effective January 1, 1995, subdivision (c)(2) of section 313.1 will apply to vending machine distribution of material deemed harmful to minors. Adults will still be able to purchase adult publications from supervised vending machines or by use of tokens or an access card. On the other hand, fewer adult publications may be available for distribution through vending machines because the requirement to provide supervised or special access machines may be too burdensome for some publishers. Moreover, the inconvenience of having to first obtain tokens or an access card before using a vending machine could be substantial, depending upon the individual circumstances.[6]

Weighing all the possible factors, we believe that the language of subdivision (c)(2) of section 313.1 may be upheld as constituting "the least restrictive means to further the articulated interest." The purpose of the 1994 amendment is to effectively limit access by minors to vending machines which purvey harmful matter. The means chosen will impinge on adult access only as necessary to achieve that aim. It must be conceded that a remedy may appear to be draconian in some circumstances and yet on balance be the "least restrictive" to accomplish the government's legitimate goal.

Rather than forbid the sale of harmful matter in vending machines, the state will allow supervision in order to provide some reasonable assurance that the purchaser is not a minor. Recognizing that actual supervision of such machines may be economically infeasible for some vendors, the state will permit the supervision requirement to be met by the vendor's issuance of tokens or an access card to adult purchasers. These provide reasonable and practical alternatives under which age-screening of would-be purchasers may be applied to vending machine sales. The 1994 amendment is designed to serve a compelling state interest without unnecessarily interfering with First Amendment freedoms.[7]

We conclude that the provisions of section 313.1 that will be effective January 1, 1995, concerning the sale of harmful matter in vending machines located on public property are constitutional.

---

[6]A notice affixed to the vending machine could inform would-be adult purchasers as to where the necessary tokens or access card may be obtained.

[7]We view the token or card alternatives to supervised vending machines as being sufficient to protect the First Amendment freedoms of both sellers and buyers of adult material. (See *Topanga Press, Inc.* v. *City of Los Angeles* (9th Cir. 1993) 989 F.2d 1524, 1528.)

\* \* \* \* \*