TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| of | : | No. 90-805 |
| | : | |
| JOHN K. VAN DE KAMP | : | DECEMBER 27, 1990 |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE CAROL BENTLEY, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a county, charter city, or general law city require a mobilehome park owner to grant the park residents a right of first refusal before the owner accepts an offer to sell the park?

CONCLUSION

A county, charter city, or general law city may not require a mobilehome park owner to grant the park residents a right of first refusal before the owner accepts an offer to sell the park.

ANALYSIS

In resolving whether mobilehome park residents may be given a right of first refusal under a local ordinance when the park owner decides to sell his or her property, we look first to relevant provisions of state law. The Mobilehome Residency Law was enacted by the Legislature in 1978 and is found in sections 798 through 798.87 of the Civil Code.[1] It sets forth a detailed and comprehensive scheme regulating the relationships between the owners and managers of mobilehome parks and the tenants in such parks. For example, the law regulates rental agreements for the park (§§ 798.15-798.22), fees and charges which management may impose (§§ 798.30-798.40), and meetings of homeowners with one another and with management (§§ 798.50-798.51). It also sets forth rules under which the park owner may terminate tenancies (§§ 798.55-798.61) and with respect to the transfer of mobilehomes by their owners and the mobilehome park itself (§§

_____

[1]All section references are to the Civil Code unless otherwise indicated.

1.                                                                 90-805

798.70-798.81). Finally, it provides for actions, proceedings, and penalties if management fails to comply with the provisions of the law. (§§ 798.84-798.87.)[2]

With respect to the transfer of a mobilehome park, subdivision (a) of section 798.80 provides:

"When the owner of a mobilehome park enters into a written listing agreement with a licensed real estate broker, . . . for the sale of the park, or offers to sell the park to any party, the owner shall provide written notice by first-class mail or by personal deliver to the president, secretary, and treasurer of a resident organization . . . not less than 10 days but no more than 30 days prior to entering into any written listing agreement for the sale of the park, or making any offer to sell the park to any party. An offer to sell a park shall not be construed as an offer under this subdivision unless it is initiated by the park owner or agent."

Section 798.80 in no way purports to require the mobilehome park owner to accept any offer made by the residents; it does not grant the residents a right of first refusal.

If the Mobilehome Residency Law or other state statutes do not expressly authorize a right of first refusal for park residents, may a local ordinance so provide? In *Palos Verdes Shores Mobile Estates, Ltd.* v. *City of Los Angeles* (1983) 142 Cal.App.3d 362, 374, the court stated:

"The Mobilehome Residency Law, while covering some aspects of the relationship between mobilehome residents and mobilehome park owners, cannot reasonably be said to constitute a general and pervasive legislative scheme for the regulation of all aspects of mobilehome parks and residents. There is also no basis for concluding that the legislation shows a legislative intent to make the subject of mobilehome parks immune from local legislation. As was said by the court in *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121, 133: `The common thread of cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption.' The variety of local conditions that affect mobilehome parks in general, and the rents to be charged their residents in particular, make the notion of state preemption in this field less than appealing. In our view, under all applicable tests, the claim of state preemption made here fails."

The *Palos Verdes* case suggests that a local ordinance granting park residents a right of first refusal would not be precluded by state statutory law. The more fundamental question to be resolved, however, is whether such an ordinance would be constitutional.

This constitutionality issue was addressed in *Gregory* v. *City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 87-91, disapproved on another point in *Fisher* v. *City of Berkeley* (1984)

---

[2]Other legislation with respect to mobilehome parks includes Government Code sections 65852.7 (mobilehome park as a "permitted land use"), 65863.7, 65863.8, and 66427.4 (conversions of mobilehome parks to other uses or closures thereof) and Health and Safety Code sections 18200 - 18700 (regulating health and safety matters), 50540 - 50547 (mobilehome parks for senior citizens), and 50781 - 50784 (mobilehome parks for low income residents).

37 Cal.3d 644, 686, footnote 43.[3]  In *Gregory* the city, as part of its rent control ordinance, granted mobilehome park residents the right of first refusal before the owner of a park could sell it to a third party.[4]  The court concluded that such a requirement would constitute a taking of the park owner's property rights in violation of the Fifth Amendment to the United States Constitution and Article I, section 19 of the California Constitution.  The Court reasoned:

"The protection of private property rights is guaranteed by the Fifth Amendment to the United States Constitution.  `No person shall be . . . deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation.'  Article I, section 19, of the California Constitution similarly mandates that `Private property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner.'  The term property is not used in the `vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. . . . [Instead it] denote[s] the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use <u>and dispose of it</u>. . . .  The constitutional provision is addressed to every sort of interest the citizen may possess.'  [Citation.]

"Although government, in the exercise of its police power, may properly regulate the use of property, a regulation may nonetheless be so onerous as to constitute a taking of property requiring the payment of compensation.  [Citations.]  The determination as to whether a regulation goes so far as to constitute a taking involves a balancing of the governmental interest sought to be advanced by regulating in the specified manner against the gravity of the interference with or impact on property rights resulting from the regulation.  [Citations.]  Application of this balancing test to the instant case results in the unavoidable conclusion that an unconstitutional taking is effected by this part of the ordinance.

"This part of the ordinance effects an outright abrogation of well recognized property rights.  The ability to sell and transfer property is a fundamental aspect of property ownership.  Property consists mainly of three powers: possession, use, and <u>disposition</u>.  [Citations.]  California courts have long recognized the fundamental importance of an owner's right, absent an illegal purpose, to sell property to

---

[3]*Gregory* suggested in dicta that a rent control ordinance must provide for a fair return on the value of a landlord's property.  The *Fisher* court concluded that the Constitution did not require such a standard.  (See also *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887, 900; *Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 288-289.)

[4]The ordinance read in part:

"`Before the sale of any mobilehome park, the park owner shall notify a designated representative of the residents of his intent to sell.  Such notification shall specify the sales price; the terms and conditions of the sale; and a date (not to exceed ten (10) days) within which a response from the residents will be accepted.  The residents, through their designated representative, within the specified time, shall notify the park owners that the residents will purchase the park on the terms and conditions set forth in the notice; present a counter offer; or decline to purchase the park.'" (*Id.*, at p. 87, fn. 7.)

whomever the owner chooses. `The constitutional guaranty securing to every person the right of "acquiring, possessing, and protecting property,". . . includes the right to dispose of such property in such innocent manner as he pleases. . . . ' [Citations.] This part of the ordinance simply appropriates an owner's right to sell his property to persons of his choice. City has thus `extinguish[ed] a fundamental attribute of ownership,' in violation of federal and state Constitutions. [Citations].

"In addition, this part of the ordinance appropriates the owner's legally recognized right to sell a right of first refusal or preemptive right in the mobilehome park. It is well established that a preemptive right is a valuable property right which may be bought, sold and enforced in a court of law. [Citations.] An owner can no longer sell this right because it has been taken by the City and granted to the park `residents.'

"This is not a case where the infringement upon property rights is the incidental and largely unavoidable byproduct of legislation designed to achieve some other beneficent purpose. This part of the ordinance has no other effect than to take away the owner's right to sell to the purchaser of his or her choice and grant to the park residents a preemptive right to purchase the owner's property. As early as 1798, Justice Chase expressed constitutional law's undisputed condemnation of a law that `takes property from A. and gives it to B.' [Citation.] Nor may City be permitted to achieve this impermissible result under the guise of an adjunct to rent control.

"It is true that in certain circumstances government may abrogate or impair property rights without compensation in the exercise of its police powers, but such circumstances are narrowly circumscribed. [Citations.] Here the only purpose identified by City as being served by this part of the ordinance is affording `mobilehome residents a measure of control over their own living situations.' The suggested justification is entirely insufficient to legitimate the uncompensated appropriation of significant private property rights." (*Id.*, at pp. 88-89.)

*Gregory* concluded that "affording 'mobilehome residents a measure of control over their own living situations' ... is entirely insufficient to legitimate the uncompensated appropriation of significant private property rights."[5] We have been advised of no other justification for the

_____

[5]Assembly Bill No. 3332, 1989-1990 Regular Session, would have given park residents a right of first refusal as part of the Mobilehome Residency Law, but the bill was vetoed by the Governor with the following message:

"This bill would require a mobilehome park owner who receives an offer to purchase the mobilehome park, to advise the organization of park residents of the offer, and prohibits the owner from accepting the offer to purchase for 10 days following such notice.

"This bill unreasonably restricts a property owner's right to sell his or her property by creating a new right of first refusal on behalf of mobilehome park residents without providing any compensation to park owners. The requirements of the bill are particularly inequitable in that there is no termination to the period during which the first right of refusal must be offered. Instead, a new right of first refusal is attached to each new offer.

proposed local ordinance.  The ordinance would not require compensation to be paid to the park owner for the value of granting the right of first refusal.[6]

Under the rationale of *Gregory*, therefore, we conclude that a county, charter city, or general law city may not require a mobilehome park owner to grant the park residents a right of first refusal before the owner accepts an offer to sell the park.

* * * *

"This issue has been dealt with already in the courts.  Gregory v. City of San Juan Capistrano (1983) 142 Cal.App.3d 72, held that a local ordinance which granted park tenants a right of first refusal was an unconstitutional taking of a property right for which the property owner is entitled to compensation."

[6]In *Hawaii Housing Authority* v. *Midkiff* (1984) 467 U.S. 229 [81 L.Ed.2d 186, 104 S.Ct. 2321], the United States Supreme Court ruled that Hawaii could require landlords to sell their property to their tenants for "just compensation."  The court found a "public use" for this exercise of the state's power of eminent domain in the declared goal of reducing Hawaii's land oligopoly.  *Midkiff* was cited by the California Supreme Court in *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97, 106, with respect to Santa Monica's rent control ordinance ["if the City of Santa Monica were to exercise its power of eminent domain to compel a sale to private parties . . . ."].  The question presented here concerns the possible exercise of the police power by a city or county.  The proper exercise of the power of eminent domain is beyond the scope of this opinion.